Thomas Roberts died in 1841, intestate, leaving a widow and eleven
children him surviving. The bill was filed in 1843 by Morris Roberts, one of the children, against the widow and the other ten children, praying for a sale of a tract of some 550 acres of land, which had descended to the children as his heirs-at-law, and in which the widow was entitled to dower. The bill also prays that the widow, and those of the children who had occupied portions of the land, should be decreed to account for the rent of the parts occupied. The land has been long since sold under a decree for the purpose of partition, but a decree in regard to the question of the rents has not been made, and the cause has never been brought on for final hearing until the present time. This delay is in a great measure to be ascribed to the fact, that the progress of the cause has been embarrassed, and much confusion produced, by overlooking the distinction between and interlocutory order for an account, in which the Court declares that the plaintiff is entitled to an account, and the matter is adjudicated in regard to that; and a mere order of reference, for the sake of having certain matters of fact ascertained by the master, as preliminary and necessary to enable the Court to declare an opinion in regard to the liability of the defendant. A reference of this kind is not an adjudication, and is made merely for obtaining such further information as the Court may suppose it stands in need of before a decision can be made. *Page 109 
In regard to the widow, the former orders in the cause are of this latter kind, and the Court now, for the first time, is called upon for a declaration as to the right of the plaintiff against her. (130)
It is clear that the defendant, Elizabeth, is not liable to account for the rent of the 50 acre tract; it was a part of the tract that descended to her and others upon the death of her father; in order to make partition it was divided off into lots, and the several heirs were allowed to bid for the lots; this lot, (to wit, the 50 acres) was bid off by Thomas Roberts, the husband of said Elizabeth, at some small sum over the average value; the other heirs conveyed to him upon payment of this small excess; so in fact he took the legal title for his wife, and she is the owner in equity, subject to the payment of the small amount paid by her husband, in order to carry out the peculiar mode of partition which was resorted to. Of course this land is put out of the present question.
The widow occupied the mansion house, and some part of the land, for several years after the death of her husband, when her dower was regularly assigned under an order of court; but, in the meantime, such of the children as lived in this State, had assigned dower to her, in the absence of the plaintiff, who had removed from the State. A part of the land which the widow had thus occupied and cultivated, is not included in the dower which was ultimately assigned to her, and the question is, can the plaintiff, by this bill, call upon her for an account of the rent of this part of the land? He can only do so upon the ground, that she was a tenant in common with him and occupied as such. This is evidently not the fact; because she took possession and occupied, claiming in severalty, and never, for one moment, admitted the relation of a tenancy in common. It may be the plaintiff might have treated her as a trespasser, but that gives no ground for an application to this Court for an account; in fact it is inconsistent with such an application, and most assuredly he cannot mix up such a claim with an application for an account against the defendants, who are tenants in common.
In regard to the children, the former orders are of both the kinds referred to above. The relation of tenants in common being admitted, an account is an order of course, for the purpose of (131) ascertaining what rent or benefit each had derived from the common fund. But it does not follow that upon the coming in of the report, the plaintiff is entitled to a decree for a ratable part of the amount charged against each: That depends upon whether any one has received more than his just share.
In McPherson v. McPherson, 33 N.C. 391, it is said "the mode of enjoyment is not material; it makes no difference whether he uses it *Page 110 
merely for shelter or as a means of supporting himself and family, or makes money by selling the products, or receives money as rent: in either case he is bound to account with his fellow," "but no recovery can be had against him, unless upon taking the account, it is shown that he has received more than his just share."
Several of the children, as they married off, had been allowed by the intestate to build cabins and clear small parcels of land, say five, ten, or twelve acres. After his death they continued to occupy these cabins, and extended the fields by enclosing some few acres more, as the purposes of firewood, rail-timber, etc., rendered necessary, but in no instance exceeding fourteen acres, including the clearing made in the intestate's lifetime. Some of the other children after the intestate's death lived with the widow, and some removed from the State; among the latter was the plaintiff. The question is, has the plaintiff a right in Equity to call upon his brothers who occupied these small parcels of the land, and require them to pay him a ratable part of what the houses and little fields could have been rented for? His brothers say that they did not occupy upon the idea that they would be charged with rent; the parcels they respectively occupied were not as much as the lot which upon partition, would have been the share of each, and they left room enough for the plaintiff to come and live on the common patrimony, in the same way they were doing, and had been allowed by their father to do in his lifetime. They say further, if we are to be charged with rent, as tenants, we claim an allowance for (132) building the cabins and clearing the land. This last idea is put out of the question, because from the report of the commissioner, we are satisfied that the erection of these houses, and the clearing of these several "patches" did not enhance the value of the tract of land; on the contrary it is apparent that a purchaser of the whole would rather have had it all in woods, except the dwelling house and the 25 or 30 acres of cleared land around it; so the sole question is, has the plaintiff a right to charge the defendants with rent for the houses they lived in, and the land they cultivated, upon the facts set out?
We think the plaintiff has no such right. The learning upon this subject is taken from the English books, but we should bear in mind that in England almost all of a man's real estate is out upon rent, and the importance of a landed proprietor is estimated by his "rent roll:" of course, if one of his heirs should receive more of the rent than amounts to his share, he is liable to account and pay the excess to the other heirs. This doctrine is correctly laid down by Adams, 232. "In addition to the decree for partition, the Court may also, if either of the co-owners has been in theexclusive perception of the rents, decree an *Page 111 
account of his receipts: but the mere fact of his having occupied the property, will not of itself make him liable for an occupation rent; for the effect of such a rule would be, that one tenant in common, by keeping out of the actual occupation of the premises, might convert the other into his bailiff, and prevent him from occupying them except upon the terms of paying rent."
Any one will see the good sense of this in reference to the state of things in England, and in regard to the condition of things among us, he will be satisfied that no other doctrine would meet the exigency of the case and that with us the rule, if anything, should be more in favor of the tenant in common whose convenience or necessities induces him to occupy part of the premises, being guilty of no ouster of his cotenants, and leaving room for all of them. If one does not like this state of things, all he has to do is, to compel partition. Suppose some of the children live in the dwelling house of the deceased parent, and are all the time willing and anxious for the others to come and (133) live there also, but the others prefer to go off to Georgia or California, and after many years return; have they a right in equity, to treat their brethren as bailiffs or servants or to consider them as their tenants, occupying upon the terms of paying rent? Or suppose on dies, leaving an inexhaustible quarry of limestone, and a kiln which he had used, and left ready for further use, and an inexhaustible supply of wood-land; then if the children live near the place and at times, whenever the hands can be spared from their farms, get out rock, cut wood and burn a kiln, the other children having moved off so as not to be in a condition to make use of the limestone, but are fully aware that the others are willing for them do so, and there is time enough for all, if they chose to come to an agreement, and manage the matter in that way — to burn kilns each in his turn — but they do not choose to do so, and the matter is left without any arrangement or understanding among them, is there any principle of justice upon which the latter can demand, or expect that the former should be converted into bailiffs for them, and be made to account for every kiln of lime that they had from time to time burnt and sold, keeping no account thereof, because not conscious of being under an obligation to do so, and consequently utterly unable to make out an account except upon "rough estimates." the question is, are they to be treated "as tenants occupying upon the terms of paying rent?"
Without going into an examination of the opinions of all the English Chancellors upon this subject, and without giving references to decided cases, all of which are referred to in the text books, we are content to declare our opinion to be, that a brother who leaves the State, *Page 112 
cannot, when it suits him to file a bill for partition, require those of his brothers who have occupied parcels of the land to pay him a ratable part of the sum for which the parcels might have been rented: the parcels occupied not being more than a ratable part of the whole tract.
We put our opinion upon the ground that there is no express (134) contract to that effect, and there is nothing from which either in law or equity such a contract can be implied.
If there is an actual ouster other considerations will be presented; but where there is no actual ouster (as in our case) the plaintiff can only support his claim by shewing [showing] that the defendants have received more than their just share. His claim depends upon the Statute of Anne, which gives him the right if the others have received more than theirshare.
It will be declared to be opinion of the Court that the bill be dismissed, with costs as to the defendant Elizabeth; and that the plaintiff, as to the other defendants, is not entitled to any decree in regard to the rents and profits of the land.
Per curiam.
Decree accordingly.
Cited: Vick v. Tripp, 153 N.C. 95; Lawrence v. Heavner, 232 N.C. 559.