MARCELLUS POPE and wife, and others *v.* EDWIN WHITEHEAD and others.

A testator after giving his land to his wife for life devised as follows : "At my wife's death it is my will that my land be equally divided between my sons, J, E, and W, and the negroes given her (the wife,) as above, are to be disposed of as follows : that is, each of *them* upon their arrival at lawful age, is to have an equal part of the said negroes, except my sons T and F, and my daughters P, B and C," &c.: *Held,* That that the three sons named were alone entitled to the land.

Where a tenant in common has improved a part of the common land he is entitled, upon the partition of the land, to have the part so improved, allotted to him at the original valuation.

(*Jones* v. *Carland,* 2 Jones' Eq. 502, cited and approved.)

SPECIAL PROCEEDING, for partition, and sale for partition, of certain lands, commenced in the Probate Court of HALIFAX county, and heard by *Watts, J.,* at Chambers, January, 23d, 1873.

The following facts were certified as found by the Judge of Probate, and by him transmitted to his Honor, with the questions of law raised thereon :

" 1. That one Joseph Whitehead, domiciled in Halifax county, died in 1833, leaving a last will and testament, which was proved at August Term, 1833, of Halifax County Court, a copy of which," &c.

2. That said testator was twice married, and had issue by his first marriage, who survived him; the defendants, Patsy, wife of John A. Stamps, Eliza Howell and Thomas Whitehead, who died thereafter, leaving issue, the defendants, Lucy, Mary and Eliza Whitehead, also John Whitehead, who has since died, leaving issue the defendants, A. J. Whitehead, Mary A. Parker, wife of Mark Parker, Louisa Cherry, wife of Amos Cherry, Turner and John T. Whitehead, and also C. Whitehead, who intermarried with one Candy Howell, and died leaving issue, the defendants, Mary, Sarah,

Margaret, Brinkley, Temperance and Jane Eliza Howell.
By his second wife, Sally, mentioned in his last will and
testament, the said testator had issue, the plaintiffs, Sarah,
wife of Wm. P. Threewitts, Dorothy, wife of Marcellus
Pope, Mary, wife of George W. Spivy, [and the [defendants,
Edwin Whitehead and Nancy, who intermarried with one
Luke Howell, and died leaving issue, the plaintiffs, Benja-
min T. Howell, and Sarah F., wife of Wm. T. Joyner, and
Wiley Whitehead, who died without leaving issue.

3. That all the lands of which said testator died seized
and possessed of, was the tract described in the complaint,
and that his wife, Sally, died in February, 1872.

4. That the defendant, Edwin Whitehead, in the year
1845, purchased the interest of the defendant, Joseph
Whitehead, in said lands and became the owner thereof.

5. That said Wiley Whitehead died in September, 1845,
intestate as to his interest in said land, and without issue.

6. That the said testator during his lifetime fully provi-
ded for his sons, and partially for his daughters of his first
marriage, by advancements of portions of his estate; to the
sons, both real and personal estate, and to his daughters only
personal property; but made no provisions by advance-
ment or otherwise for the children of his second marriage.

7. That the defendant, Edwin Whitehead, made perma-
nent improvements upon said land, in the year 1867, by
erecting a dwelling-house and other buildings thereon, at a
great expense; and that at the time of this erection the said
defendant was under the impression, that at the death of his
mother, the said Sally, the title in fee in said lands
vested in him, he having previously purchased the interest
of the defendant, Joseph Whitehead, and the said Wiley
Whitehead having died before his interest in the lands
vested in possession, and that he therefore had no interest
therein.

8. That the defendant, [Edwin Whitehead, executor of

Wiley Whitehead, dec'd, heretofore filed a petition in this Court, (and the same is now pending and undetermined therein,) to sell the interest of his said testator in said lands, to make assets for the payment of debts, &c.

9. That the plaintiffs and defendants are tenants in common of said land, and are desirous of partition of the same according to their respective interest therein.

10. That the above-named testator, Joseph Whitehead, by his said last will and testament, a copy of which, &c., provided as follows": (Those parts of the will necessary to an understanding of the points raised are set out in the opinion of the Court.)

"Upon the foregoing facts, the following issues or questions of law, arose:

(1.) The plaintiffs claim that the said testator, Joseph Whitehead, never intended in his said last will and testament to exclude any of the children of the second marriage from participation in, but intended to devise his real estate to his wife, Sally, for life, and then equally to all the children of the second marriage; that his daughters of said marriage, to-wit: Dorothy, wife of the plaintiff, Marcellus Pope; Sarah, wife of the plaintiff, Wm. P. Threewitts; Nancy, now deceased, and represented by the plaintiffs, B. T. Howell and Sarah F. Joyner, wife of Wm. T. Joyner, and Mary, wife of the plaintiff, Geo. W. Spivey, were inadvertently and by mistake omitted from said last will and testament, all of which a proper construction will show. The plaintiffs further contend, that said tract of land above referred to, should be divided into seven equal shares; to one of which, the plaintiff, Dorothy, wife of Marcellus Pope, is entitled; one to plaintiff, Mary, wife of Geo. W. Spivy; one to Sarah, wife of Wm. P. Threewitts; one to defendant, Edwin Whitehead, in his own right, and one to him as assignee of the defendant, Joseph Whitehead; one to the heirs of Wiley

Whitehead, dec'd; and one jointly to the plaintiffs Benjamin T. Howell and Sarah F. Joyner, wife of W. T. Joyner.

They further contend, that the share to which the heirs of Wiley Whitehead, dec'd, are entitled, should, on account of its smallness, the number of owners and the impracticability of actual partition thereof, be sold for partition, &c.

(2.) The defendant, Edwin Whitehead, contends, that the devise of the real estate of the testator, Joseph Whitehead, was in express and positive terms to his sons, Joseph, Edwin, (both defendants in this action,) and Wiley Whitehead, now deceased, after the death of his wife Sally; that by the provisions and upon a proper construction of said will, all other persons were, and it was the intention of the testator to exclude all other persons from any participation in his real estate after the death of his wife, Sally; and that the same was devised to his said sons, Joseph, Edwin and Wiley, and to them only, subject to the said life estate therein. That said real estate should be divided into three shares, to-wit: to two of which, this defendant, (Edwin,) in his own right and as assignee of the defendant, Joseph, is entitled; and the heirs of Wiley Whitehead to the remaining one. That in the division of the said premises, he should be allowed the value of the permanent improvements placed thereon, or that they should be embraced in the portion thereof allotted to him, and at no valuation. Further, that the share to which the heirs of Wiley Whitehead are entitled, should not be divided among them, either by actual partition, or by a sale for partition, during the pendency of the petition of said Wiley's executor, to sell the same and make assets, &c."

His Honor, upon consideration of the foregoing facts, admitted and found by the Judge of Probate, and the questions of law arising thereon, *adjudged and decreed:*

"1. That the defendant, Edwin Whitehead, is entitled to an undivided two-thirds in and to the real property set out

in the pleadings, and that the other one-third descends to the heirs at law of Wiley Whitehead.

2. That actual partition be made of said premises, and that the Clerk appoint commissioners for that purpose, and to set apart as above, two-thirds of said lands to said Edwin Whitehead, and one-third to the heirs at law of Wiley Whitehead.

And it appearing further, that Edwin Whitehead has placed certain and sundry improvements upon said land, under a reasonable belief, that he was the owner in entirety of said premises, *it is adjudged,* that the said Edwin White-head be allowed his reasonable valuation of said improvements in the partition ; and that this cause be certified to to the next term of any Superior Court to be held for the county of Halifax, to the end, that a jury may be empanelled to assess the value of said improvements in the manner and according to law, as in the statute in this case made and provided.

3. It appearing further, that the executor of Wiley White-head opposes the sale of the one-third devolving upon the heirs-at-law of his testator, and that the personal property may prove insufficient to pay debts ; *it is decreed,* by the Court, that as to partition, or sale for partition of said one-third among the heirs of Wiley Whitehead, this cause is retained for further hearing," &c.

From which judgment, the plaintiffs appealed.

*Batchelor, Edwards & Batchelor,* for appellants.
*Clark & Mullen,* contra.

RODMAN, J. Two questions are made in this case :

1. Upon the construction of the will of Joseph White-head.

2. As to the right of a tenant in common, who has made

improvements on the common land, to be allowed for them on a partition.

1. The material parts of the will are as follows:

" I will and bequeath to my living wife, Sally, all my lands which I may die seized and possessed of, and the following negroes:" (here follow the names of several slaves); " and also," (here follows a list of sundry articles of personal property.)  " The above legacy is given upon the following conditions: At my wife's death it is my will that my land be equally divided between my sons, Joseph, Edwin and Wiley, and the negroes given her as above, are to be disposed of as follows: that is, each of *them*, upon their arrival at lawful age, is to have an equal part of the said negroes, except my sons, Thomas and John, and daughters Patsy Betsy and Penny—these five children are to have no part of my estate, except that already given them by deed and what is expressly given them by this will."

He then gives legacies of negroes and personal property to his daughters Patsy and Betsy, and proceeds: " The negroes given to my wife upon the conditions named in this will are, in case of the death of either of my children, (to whom they are given afterwards,) dying before their arrival at lawful age, or without a lawful heir, to descend to the remaining living children by my said wife Sally."

It is contended on behalf of the daughters of the second marriage:

That when the testator, after having given the land to his three sons of that marriage, *nominatim*, goes on to say that the negroes given to his wife for life, " shall be disposed of as follows: that is, each of *them* is to have an equal part, *except the children of the first marriage.*"  The word *them* connot refer to the three sons, because in that case the exception being of those not embraced in the original description would be absurd.  It is contended that to make the exception sensible and have any meaning, we must sup-

pòse the word *them* to refer to some antecedent, more exten-
sive than the three sons named, and at least as extensive as
all the children of the testator; and then as the children of
the first marriage are excepted, it would leave the devise in
effect to read to the three sons and three daughters of the
second marriage.   Upon that construction the will would
read, "that my land be equally divided between my three
sons and all the rest of my children, except those by my
first wife."   But it must strike us that this would be a very
awkward and unusual mode of giving the land to all the
children of the second marriage.   The sentence may as nat-
urally be amended by striking out the word *them* and in-
serting in lieu of it, the words " my children," except, &c.,
which, while it would leave the devise to the sons to stand
as a separate sentence, would make a gift of the negroes to
the children of the second marriage.   Undeniably there is
an obscurity in the will as it stands at present.   Some
phrase has probably been left out, or some word changed in
transcribing it.   Several conjectural emendations might
be made, any of which would make the text sensible, but
the meaning upon each would be different.   All of them
would be merely conjectural.   If we were dealing with the
corrupt text of a classic author, an exercise of our ingenuity
would be, at worst, harmless.   But we have no right to do
it with a solemn will; we must take the text as it is, and
put a meaning on it as far as we can.   That part of it which
gives the land to the three sons is clear.   After that the un-
certainty begins.   When the girls claim to share the estate
with the sons, the burden is on them to show some words in
the will to authorize the claim, but this they cannot do;
they are obliged to resort to conjecture; but we are not at
liberty to deprive the sons of any part of the estate given to
them upon conjecture.   A will must be in writing and
signed by the testator, but what the claim of the daughters
is put on, is not in the writing.   The construction cannot

be varied by any supposition or proof of the affection of the testator to the daughters. A will may be inofficious, and it may appear to us capricious and unjust, but we are obliged to enforce it, because it is the will of one who had the right to make it. We cannot reform the will according to our notions. The daughters take no estate in the land by the will.

2. The defendant, Edwin Whitehead, took one-third of the land by devise (subject to his mother's life estate); in February, 1840, he bought the third devised to Joseph; and by the death of Wiley, in 1865, he inherited one-tenth of his share (subject to its liability for his debts). In 1867, during the life of the tenant for life, he took possession of some part of the land and built a dwelling-house and made other improvements thereon. The case states, that he did this under the belief that he would own the whole at the death of the life tenant, thinking that as Wiley had died during the life of the life tenant, his heirs would get nothing. If he had this belief, it was founded on a mistake of law, and can not benefit him. He contends that he is entitled to an allowance for his improvements, under chap. 147 of the Acts of 1871–1872, p. 225. But upon an attentive examination, it will be seen that that act does not apply to tenants in common. It says, in substance, that any defendant against whom a judgment shall be rendered for land, may, upon a petition stating that while holding the premises under a title, believed by him to be good, he made improvements, &c. In this case, there has not been, nor will be, any judgment against the improving tenant for land. He will, after the judgment, remain in possession of all he is now possessed of: the difference being, that he will then hold in severalty the share which he now holds in common. The object of the act was to introduce into the law of North Carolina an equity in favor of one who has purchased lands, and in the belief that he has acquired a good title thereto, has made lasting im-

provements, popularly called *betterments.* It is an equity unknown in England, but it has long been an accepted doctrine in the New England States and probably in some others, that upon eviction by the true owner, such an occupier was entitled to an allowance for his improvements. The particular equity seems to be confined to cases of this sort; but probably, vendees who enter into possession upon a contract for title, which being in parol is void, *Albea* v. *Griffin,* 2 D. & B., 9, or, where for any cause, the vendor cannot make title, have a like equity. 2 Green. Ev. secs. 549, 551; 2 Kent, Com. 334, 338; and see the very learned and elaborate opinion in 1 Story Rep. 478, where the doctrine is attempted to be established on the general doctrines of equity.

The defendant, Edwin Whitehead also contends that on general principles of equity he is entitled to the allowance claimed; and we think he is. *Jones* v. *Carland,* 2 Jones" Eq. 502, establishes, that prior to the Act of 1871–'72, such betterments as are provided for in that Act were not then allowed in this State; and that the equity of a tenant in common, who had improved a part of the common land, to have that part laid off to him at its original value, was recognized. In 1 Story Ex. Jur. s. 656 b., it is said, " In suits in equity also for partition, various other equitable rights and claims and adjustments will be made, which are beyond the reach of Courts of law. Thus if improvements have been made by one tenant in common, a suitable compensation will (as we have seen,) be made him upon the partition, or the property on which the improvements have been made, assigned to him. So Courts of equity will not (only) take care that the parties have an equal share and just compensation; but they will assign to the parties respectively such parts of the estate as would best accommodate them, and be of most value to them, with reference to their respective situations, in relation to the property before the partition. For in all cases of partition, a Court of equity does

not act merely in a ministerial character, and in obedience to the call of the parties who have a right to the partition; but it founds itself upon its general jurisdiction as a Court of equity, and administers its relief *ex æquo et bono* according to its own notions of general justice and equity between the parties." See also *Green* v. *Putnam,* Barb. 501. (N. Y.)

A decree may be drawn, declaring that under the will the three sons named were alone entitled to the land; also for a partition, and directing the commissioners to assign to Edwin Whitehead, his share of the land so as to include that part on which he has made improvements, valuing it at what it would have been worth without the improvements, and otherwise in accordance with this opinion. The case may be remanded if either party desires it, so that a judgment may be given in the Superior Court in conformity with this opinion, and such further proceedings be had, &c. The defendants will recover costs in this Court.

Let this opinion be certified.

PER CURIAM.                    Judgment accordingly.