Atha *v.* Jewell.

## BENJAMIN ATHA et al.

*v.*

## CLAUDE B. JEWELL et al.

Complainants bought lands adjoining their factories in 1879. The title to an interest therein (supposed to be one-sixth) was in some doubt, but no claimant therefor had appeared since 1846, and they were assured that their title to the whole was good. In order to fortify their title, they took a transfer of a declaration of sale of the premises for taxes, made in 1869. Afterwards they contracted for the erection of buildings and machinery on the lands, to be used in connection with their other works, and erected the buildings thereon accordingly. On a bill *quia timet*, filed by them to quiet their title to the before-mentioned interest, certain claimants appeared, and the proceedings in that suit were dismissed as to them. On a bill for partition—*Held*, that the circumstances of the case were not such as to deprive complainants of the right to equitable partition between them and the owners of the interest.

Bill for partition.   On final hearing on pleadings and proofs.

*Mr. D. A. Ryerson,* for complainants.

*Mr. A. Q. Keasbey,* for defendants.

NOTE.—Where improvements have been made by a tenant in common, in good faith, he is entitled, on a partition of the land, to have the part so improved alloted to him, or, if such allotment be injurious to his cotenant, then to receive compensation therefor. *Freeman on Part.* §§ 509–511. Also, *Reed* v. *Reed, 68 Me. 568; Pope* v. *Whitehead, 68 N. C. 191; Collett* v. *Henderson, 80 N. C. 337; Sanders* v. *Robertson, 57 Ala. 465; Spitts* v. *Wells, 18 Mo. 468; Nelson* v. *Leake, 25 Miss. 199; Paddock* v. *Shields, 57 Miss. 340; Roberts* v. *Beckwith, 79 Ill. 246; Allen* v. *Hall, 50 Me. 253; Reeves* v. *Reeves, 11 Heisk. 669.*

See *Fair* v. *Fair, 121 Mass. 559; Carland* v. *Jones, 2 Jones Eq. 506; Withers* v. *Thompson, 4 Mon. 323.*

The rule seems well settled that one tenant cannot charge his cotenant with any part of the costs of improvements put on their lands, without the latter's consent. *Chambers* v. *Jones, 72 Ill. 275; Austin* v. *Barrett, 44 Iowa 488; Crest* v. *Jack, 3 Watts 238; Carland* v. *Jones, 2 Jones Eq. 506; Freeman on Part.* § *262; Thurston* v. *Dickinson, 2 Rich. Eq. 317; Morgan* v. *Morgan, 23 La. Ann. 502.* See *McAdam* v. *Orr, 4 Watts & Serg. 550; Drennen* v. *Walker, 21 Ark 539.*

Atha *v.* Jewell.

THE CHANCELLOR.

This is a suit for partition. The land of which partition is .sought is a lot of about one and fifty-eight hundredths acres lying on the southerly side of the Passaic river, in the city of Newark. It was formerly the easterly part of a tract of salt meadow of about six acres. The complainants, Messrs. Atha and Illingworth, claim to be the owners of five-sixths of the property. They bought it in 1879 of David S. Brown and wife. Their deed is dated July 19th in that year. At the same time they bought from the same parties the lot of about one and thirty-two hundredths acres adjoining it on the westerly side. When they purchased those two lots they were the owners of the land adjoining the latter lot on the westerly side, and were in the occupation of it, carrying on there a very extensive business in the manufacture of cast steel, &c., and they purchased the two lots in order to extend their works. Soon after buying them they took possession, and immediately began filling in the low places on them and erected a high fence, at a cost of about $500, along the northeasterly and southeasterly sides of the lot of which partition is sought. On the two lots they erected a large frame furnace building about one hundred and nine feet by eighty-five feet, about two-thirds of which are on the lot in suit. They also erected another small building, a gas-house, on the lot. The permanent improvements put by them on the two lots cost them upwards of $30,000, and were necessary facilities for the conduct of their busi-

---

Or, for repairs expended on the premises without notice or request. *Doane* v. *Badger, 12 Mass. 66; Mumford* v. *Brown, 6 Cow. 475; Stevens* v. *Thompson, 17 N. H. 103; Taylor* v. *Baldwin, 10 Barb. 582, 626; Deck's Appeal, 57 Pa. St. 467; Calvert* v. *Aldrich, 99 Mass. 74; Young* v. *Gammel, 4 Greene (Iowa) 207; Coolidge* v. *Hager, 43 Vt. 9.*

*Aliter,* after such notice and request. *Louvalle* v. *Menard, 6 Ill. 39; Gardner* v. *Diederichs, 41 Ill. 158; Anderson* v. *Greble, 1 Ashm. 136; Denman* v. *Prince, 40 Barb. 213; Grannis* v. *Cook, 3 N. Y. Sup. Ct. 299; Sears* v. *Mumson, 23 Iowa 380; Reed* v. *Jones, 8 Wis. 421; McDearman* v. *McClure, 31 Ark. 539; Graham* v. *Pierce, 19 Gratt. 28; Clark* v. *Plummer, 31 Wis. 442.*

The costs of such repairs, *semble,* are a personal charge on the cotenant. *Huston* v. *Springer, 2 Rawle 97; see Harman* v. *Osborne, 4 Paige 336.* And if he refuse to contribute, he cannot maintain an action for damages against his cotenants because they did not repair. *Stallings* v. *Corbett, 2 Speer 613.*

Atha *v.* Jewell.

ness.   There is a large amount of machinery in the build-
ings.   It appears that when they bought the lot in suit
they were aware of the fact that there might be a question as to
their title, so far as regarded an undivided sixth of the land.
The property had been conveyed by Ellison Conger as his own
in 1846, and again subsequently, after he had regained the title,
in 1861; but it was supposed that his title might not have been
perfect, but there had been many years (more than thirty)
of non-claim by any one interested adversely to him and those
who held under him, and during all that time no one
except him and those claiming under him, had given any
attention · whatever to the property.   It had been sold as
long ago as 1869, for unpaid taxes of 1868, and the city
had bought it in and had taken a declaration of sale, which
was transferred to the complainants as a fortification of their
title.   Their title, if Ellison Conger, indeed, was not the owner
of the whole property, was supposed to have been made good
through limitation as to the undivided interest before referred
to.   They believed it was good and that they might safely pro-
ceed to put permanent and costly improvements on the property,
and they did so accordingly.   They had been told of the possible
defect in the title, but relied on their possession and the title ob-
tained from their grantors.   They appear, according to Mr.
Atha's testimony, to have been advised that as far as their busi-

---

The representatives of a tenant for life cannot claim from the remaindermen
the value of improvements erected by such tenant.  *Scott* v. *Guernsey, 48 N.
Y. 106; Cannon* v. *Hare, 1 Tenn. Ch. 22;* see *Bond* v. *Hill, 37 Tex. 626;
Way* v. *Way, 42 Conn. 52; Piper* v. *Furr, 47 Vt. 721; Broyles* v. *Waddell, 11
Heisk. 32.*

Whether the benefit of improvements put upon the premises by one tenant,
pending a partition, can be claimed.  *Parsons* v. *Copeland, 38 Me. 537; West-
ervelt* v. *Haff, 2 Sandf. Ch. 98; Annely* v. *De Saussure, 12 S. C. (N. S.) 488;
Coble* v. *Clapp, 1 Jones Eq. 173; Taylor* v. *Foster, 22 Ohio St. 255.*

After partition, the liability for improvements erected before, ceases.  *Crafts*
v. *Crafts, 13 Gray 360; Hoyt* v. *Kimball, 49 N. H. 322; Grier* v. *Fletcher, 1
Ired. 417; Beardsley* v. *Knight, 10 Vt. 185.*

The improvements are estimated, not at their cost, but at the value which
they have imparted to the premises.  *Moore* v. *Williamson, 10 Rich. Eq. 323;
Pope* v. *Whitehead, 68 N. C. 191.*  And the allowance, *semble,* ought to be
sought by cross-bill.  *Mahoney* v. *Mahoney, 65 Ill. 406.*—Rep.

ness purposes (meaning the use of the property) were concerned, the title which they had would be just as good for them as if their title of record were perfect, but if they should want to sell or mortgage the property the defect might affect the valuation. After purchasing the property, they, by advice of counsel, took proceedings under the act to "compel the determination of claims to real estate in certain cases and quiet the title to the same." The result was the appearance of claimants to the interest, but the bill was dismissed as to them, and this suit was then begun. At the time when the complainants obtained information that the claimants insisted upon the validity of their title to an interest in the property, the buildings had not been built on the property, but they had been contracted for, and foundations for them and for the machinery to be put into them had either been laid or preparation by driving piles had been made therefor, and the machinery had been ordered. Mr. Atha testifies that at that time they had been involved in an expense in the improvements of over $25,000, and if they had then stopped them they would have been liable on the contracts, on which they had actually paid a considerable sum of money, and that work to the amount of $10,000 or $15,000 had been done. And he further says that they could not have stopped them without very great sacrifice.

The main question presented is, whether the complainants are, in equity, entitled to consideration with respect to those improvements. The defendants insist that they are not, but that partition should be made of the property as it was when the bill was filed, making no allowance to the complainants for the improvements. On the one hand, the complainants insist that there remains of the lot a piece of twenty feet front on the river, running through to the rear, not occupied by their buildings, which is enough to answer all equitable claim of the defendants in the partition; that that piece, or part of it, as justice may require, may be assigned in severalty to the defendants, or if the whole of it should not be enough for that purpose, owelty may be awarded. On the other hand, the defendants urge that the complainants have forfeited all claim to equitable consideration, be-

Atha *v.* Jewell.

cause of their attempts, which the defendants impute to them, to defeat by bill to quiet title what is now conceded to be the just claim of the defendants to a share of the property, and also because their improvements were made after they had knowledge of the existence of such claim, and knew that its validity and justice would be insisted on. Under the circumstances disclosed by the evidence, the fact that the complainants filed the bill to quiet the title cannot disentitle them to the consideration and protection of equity in the premises. As before stated, for more than thirty years there had been neither claim made nor attention given to the property, either by the defendants or any one under whom they claim. Whether there was in fact any valid outstanding claim of title to the property, was believed to be quite doubtful, and if any such there were, there was doubt as to the amount of the interest and who owned it. The case was one of the kind for which the statute was designed, and there is no room for the imputation of fraudulent design in the filing of that bill. When the complainants received information that there was a claim which it was insisted could be established, to an interest in the property, they had proceeded to a considerable distance in their improvements, which had been undertaken while as yet they presumed that their title was good to the whole of the property. Nor is there, in their proceeding to make their contemplated improvements, then already in fact not only contracted for, but begun—improvements very necessary for their business—any ground for attributing to them the inequitable design of rendering the defendants' interest less valuable or more easy of acquisition by themselves, by reason of their having occupied the greater part of the property with their improvements. It is an established principle that a court of equity, in decreeing partition, does not act ministerially and in obedience to the call of those who have a right to the partition, but founds itself on its general jurisdiction as a court of equity, and administers its relief *ex æquo et bono*, according to its own notions of general justice and equity between the parties. It will, therefore, by its decree adjust the equitable rights of all the parties interested in the estate, and see to it that partition is made

accordingly. And in making these adjustments, it will not con-
fine itself to the mere legal rights of the original tenants in
common, but will have regard to the legal and equitable rights
of all other parties interested in the estate which have been de-
rived from any of the original tenants in common, and will, if
necessary for this purpose, direct a distinct partition of several
portions of the estate in which the derivative alienees have a
distinct interest, in order to protect that interest. *Story's Eq. Jur.*
§§ *656 b, 656 c.* So, if improvements have been made by a
tenant in common, suitable compensation will be made to him on
the partition, or the part on which the improvements are will be
assigned to him. *Id.* § *656 b.* In *Brookfield* v. *Williams, 1
Gr. Ch. 341,* a person owning certain shares (four-sixths) of a
small tract of land of fourteen acres, tore down the old house
and barn on it, which had gone to decay, and built a new house
and out-buildings at a cost of $2500, and greatly improved the
lot by cultivation and making new fences. He knew that he
owned only four-sixths of the property, and he had no consent
(there was no objection or opposition) to the improvements from
his co-tenants in common. The court said he had acted in good
faith and with an honest purpose of improving the property, and
protected him in his improvements accordingly. In *Doughaday* v.
*Crowell, 3 Stock. 201,* a suit for partition, the complainant had ac-
quired seven-eighths of a tract of fifty acres, and had tried in vain
to get a deed for the other eighth. After her failure to get the
remaining eighth, she put valuable improvements on the land.
The court gave her partition on equitable terms, so as to secure
to her the benefit of her improvements. In *Hall* v. *Paddock, 6
C. E. Gr. 311,* the bill was for partition. The complainant's
title was defective, but he was not aware of it when he made his
improvements (which were very considerable) on the property.
He sought equitable partition against the defendant, who, having
established his claim by ejectment, was proceeding to a partition
at law. The chancellor said :

"The rule that a tenant in common who has made improvements on the
land held in common, is entitled to an equitable partition, is well established

Atha *v.* Jewell.

and is hardly disputed by counsel. The only good faith required in such improvements is that they should be made honestly for the purpose of improving the property, and not for embarrassing his co-tenants or encumbering their estate or hindering partition. And the fact that the tenant making such improvements knows that an undivided share in the land is held by another, is no bar to equitable partition."

It is quite clear that the complainants in this case are entitled to the aid of equity; that they are entitled to have a partition in which the land on which their buildings stand will be set off to them. But it may be that the residue of the land, if awarded to the defendants, will not be enough to answer the purposes of an equitable partition, so far as they are concerned, either because it would not be sufficient in quantity, or if sufficient in quantity, would not sell for as much as it would bring if sold with and as a part of the whole lot, and therefore is not enough in value. If that be so, the complainants must pay owelty. In *Brookfield* v. *Williams, ubi supra,* the Chancellor said:

"The justice of the case, however, strikes me as plain (and that is mainly to be looked at) that the complainants should be allowed their share in the land on which the buildings erected by their ancestor are located. If the land on which they stand be more than their share, they must make recompense in money, but if the remaining lands are sufficient to give the defendants their share in value, it must be given out of them."

The question as to whether the complainants shall be required to account to the defendants for use and occupation was suggested on the hearing. It appears, as before stated, that the complainants went into possession of the property in or about July, 1879. It also appears that they expended money in the improvement of the lot by filling in and fencing. They have undoubtedly, since they began to build, which was about the time they took possession, had exclusive use of the land. Mr. Atha says that as near as he can say, they began their improvements the latter part of July, 1879. He adds that they had driven between five and six hundred piles before October 1st, 1879, and they fenced the property. But there was never any rent received from the property. It produced nothing, was a mere building lot, and it

does not appear that the complainants occupied more than what would have been their share if their share had been assigned to them in severalty. The defendants never demanded, nor, as far as appears, expressed any desire to have any possession of the residue of the lot. Under the circumstances there should be no account for use and occupation. If the complainants filled in the lot, or otherwise improved it, as they did, with the fence, it would be taken into account if there were an account for use and occupation.

There will be a reference to a master to ascertain and report the respective interests of the parties in the property, and whether a decree can justly and equitably be made by assigning to the complainants the part of the lot whereon the buildings stand and to the defendants their share out of the rest of the land; and whether the part of the lot whereon the buildings stand is more than the share of the complainants, and if so what owelty should be paid by them to make the partition equitable, if that part be assigned to them.