DILLON, Judge.
 

 *68
 
 Polyfield Harris, William Harris, Tonya Barkley, Samantha Davis, and Patrick Perkins ("Plaintiffs") appeal from the trial court's order (1) denying their claims for rents and profits and for attorneys' fees and (2) apportioning the proceeds to which they are entitled from the sale of certain real property.
 

 I. Background
 

 This is a dispute among tenants in common-all lineal descendants and heirs of the late James Harris, Sr.-as to how the proceeds from
 
 the sale by partition
 
 of certain real estate (the "Property") they inherited from Mr. Harris, Sr., should be divided.
 

 The record evidence tends to show the following:
 

 James Harris, Sr., had seven children, including a son, Thomas Harris. Mr. Harris, Sr., owned and lived on the Property.
 

 *69
 
 In 1993, four events occurred which are relevant to this action: (1) Mr. Harris, Sr., suffered a stroke and moved off of the Property.(2) He executed a document naming Defendant Myra Gilchrist (his granddaughter and Thomas Harris' daughter) as his power of attorney. (3) Exercising her newfound authority, Defendant Gilchrist executed a deed (the "1993 deed") conveying her grandfather's Property to her father, unbeknownst to her grandfather's other six children. (4) Thomas Harris moved onto the Property, where he lived, undisturbed by his siblings, until his death in 2008.
 

 In 1997, Mr. Harris, Sr., died. There is evidence that Thomas Harris' siblings were unaware of the 1993 deed and believed that they each inherited an interest (along with their brother Thomas) in the Property and that the siblings allowed their brother Thomas to continue living in the house.
 

 *122
 
 In 2008, Thomas Harris died leaving two daughters, Defendant Gilchrist and her sister, Defendant Valarie Harris. His two daughters took possession of the Property, claiming 100% ownership as Thomas Harris' heirs through the 1993 deed. The other heirs of Mr. Harris, Sr., did not become aware of the 1993 deed until after Thomas Harris' death.
 

 In 2010, three of Thomas Harris' siblings filed this action against Thomas Harris' estate and his two daughters claiming an ownership interest in the Property, contending that the 1993 deed was void. Further, Plaintiffs made a claim against Thomas Harris' estate and his two daughters for rents and profits for the time Thomas Harris and his daughters were in sole possession of the Property.
 

 In 2011, after a hearing on the matter, the trial court granted partial summary judgment for Plaintiffs, declaring the 1993 deed
 
 void ab initio.
 
 This partial summary judgment order effectively declared that title to the Property was still held by Mr. Harris, Sr., at the time of his death and, upon his death, title passed to his seven children, as tenants in common. This order has not been appealed.
 

 Thereafter, Plaintiffs, as tenants in common, filed a petition with the clerk for a partition of the Property by sale.
 
 [1]
 
 The clerk appointed a commissioner, who sold the Property for $53,000.00. The clerk entered an order dividing the proceeds from the sale among the tenants in common. This order was appealed to the superior court.
 

 *70
 
 The matter came on for a bench trial in superior court. The court entered its judgment dividing the proceeds of the sale. Out of these proceeds, the court awarded Thomas Harris' daughters the value of the improvements placed on the Property by Thomas Harris during his lifetime (or betterments) and also a reimbursement for certain Property expenses paid by Thomas Harris during his lifetime. The court expressly denied a claim by Plaintiffs that
 
 they
 
 receive an award for the years of exclusive possession of the Property by Thomas Harris and his daughters. Plaintiffs entered written notice of appeal.
 
 [2]
 

 II. Analysis
 

 In this action, the 1993 deed, which purportedly conveyed Mr. Harris, Sr.'s, 100% ownership in the Property to Thomas Harris, has been declared void. Accordingly, Thomas Harris' daughters were tenants in common with Mr. Harris, Sr.'s, other heirs. A partition sale was ordered, and the Property was sold. This dispute concerns the trial court's division of the sale proceeds. Specifically, we consider whether the trial court erred in making an award to Thomas Harris' daughters for the betterments and Property expenses and in denying Plaintiffs an award for the fair rental value of the Property for the period that Thomas Harris and his daughters possessed the Property.
 

 A. Value of Improvements
 

 Our Supreme Court has explained that our Betterment Statutes, now codified in N.C. Gen.Stat. § 1-340,
 
 et seq.
 

 ,
 
 were enacted "to introduce into the law of North Carolina an equity in favor of one who has purchased lands, and in the belief that he has acquired a good title thereto, has made lasting improvements, popularly called
 
 betterments
 
 ... [and] that upon eviction by the true owner, such an occupier [is] entitled to an allowance for his improvements."
 
 Pope v. Whitehead,
 

 68 N.C. 191
 
 , 198-199 (1873) (emphasis added). That is, prior to the passage of the Betterment Statutes, North Carolina did not recognize the right of an occupier-who is ejected from land that he believed, in good faith, that he owned-to receive from the true owner an accounting for the increase in the land's value caused by his improvements.
 

 Id.
 

 at 199
 
 .
 

 Our Supreme Court further explained, however, that
 
 even before the passage of the Betterment Statutes,
 
 North Carolina had always
 
 *71
 
 recognized the equitable remedy of a
 
 *123
 
 tenant in common (as opposed to an occupier with no ownership interest) to receive an allowance for any improvements (s)he makes to property at the time the property was partitioned.
 

 Id.
 

 at 199-200
 
 (stating that "in all cases of partition, a Court of equity does not act merely in a ministerial character, and in obedience to the call of the ... [tenants in common]; but it founds itself upon its general jurisdiction as a Court of equity, and administers its
 
 ex aequo et bono
 
 [Latin for "according to the right and good"] according to its own notions of general justice and equity between the parties"). Essentially, the Betterments Statutes provided non-owners a remedy that equity already was providing to tenants in common.
 

 Here, we consider the claim by Thomas Harris' daughters for an allowance for the improvements made by their father to the Property, recognizing that Thomas Harris had no ownership in the Property until his father's death in 1997, at which time he became a tenant in common with his siblings.
 
 See, e.g.,
 

 Daniel v. Dixon,
 

 163 N.C. 137
 
 , 138-39,
 
 79 S.E. 425
 
 , 425-26 (1913) (recognizing that a tenant in common is entitled to a credit for the other tenant's pro rata share of the value of the improvements he makes to the property during the time he had bona fide reason to believe that he was the
 
 sole
 
 owner under a deed which was later declared to be void);
 
 Harris v. Ashley,
 

 38 N.C.App. 494
 
 , 497-98,
 
 248 S.E.2d 393
 
 , 395-96 (1978) (holding that a tenant in common who improves property reasonably believing that he is the sole owner "is entitled to recover the amount by which he has enhanced the value of the property"). We note that the other co-tenants have made no argument concerning Defendants' betterments claim,
 
 per se.
 
 Rather, they argue that the trial court erred in determining
 
 the amount
 
 of the allowance for the improvements.
 

 Our Supreme Court has held that
 
 the amount
 
 of the credit should be based
 
 not
 
 on "the actual cost in making the [improvements],
 
 but
 
 [on] the enhanced value they g[ive] the premises."
 
 Carolina Cent. R. Co. v. McCaskill,
 

 98 N.C. 526
 
 , 537,
 
 4 S.E. 468
 
 , 474 (1887) (emphasis added). Our Court has likewise so held.
 
 Harris,
 

 38 N.C.App. at 498
 
 ,
 
 248 S.E.2d at 396
 
 (holding that the actual expenditures are the "wrong measure of damages" and that the tenant in common who improves the property "is entitled to recover the amount by which he has enhanced the value of the property").
 

 In its order, the trial court made an award to Thomas Harris' daughters for the improvements based on a finding that "[t]he value of the permanent improvements made by Thomas Harris is at least $31,599.00 based on the increase in the assessed [tax] value of the property from
 
 *72
 
 $26,090.00 to $57,689.00 during the period that Thomas Harris occupied the property." There is no other finding in the order regarding
 
 the value
 
 of the Property or the improvements made by Thomas Harris.
 

 We hold that the trial court did not err in the
 
 methodology
 
 used to ascertain the amount of the allowance. Indeed, the court appears to have based the amount on the change in the Property's value caused by Thomas Harris' improvements.
 
 [3]
 
 However, we agree with Plaintiffs that
 
 the evidence relied on
 
 by the trial court was not competent to show the amount by which the improvements (betterments) had increased the value of the Property. Rather, the evidence cited by the trial court merely shows that the
 
 *124
 
 Property had a tax value of $26,060.00 in 1993 and a tax value of $57,689.00 in 2008. Assuming that the tax value is competent evidence as to the property's value as of a particular date, the fact that the Property was worth $26,060.00 in 1993 and $57,689.00 in 2008 does not tend to show at all how much the improvements made by Thomas Harris during that time added to the value of the Property. It is probable that much (if not all) of this increase in value was passive in nature, resulting from the normal inflation in real estate values generally over the fifteen-year period. Further, it may be that the 2008 value itself is too remote in time, as a matter of law, to establish the value of the Property as of the date it was eventually sold. On remand, the trial court shall make findings as to how much (if any) of the proceeds from the sale were attributable to the improvements made by Thomas Harris.
 

 B. Rents
 

 Plaintiffs argue that the trial court erred in concluding that they were
 
 not
 
 entitled to rents for the period that Thomas Harris and his daughters occupied the Property under color of title. We agree in part.
 

 *73
 
 Our Betterments Statutes generally allow for one against whom a claim for betterments is made to recover
 
 the fair market rental value
 
 of the property for the time the one claiming the betterments occupied the property.
 
 See, e.g.,
 
 N.C. Gen.Stat. § 1-341. Rent, though, which accrues more than three years before the filing, may only be used
 
 to offset
 
 the betterments allowance (and not to establish a claim for affirmative relief).
 

 Id.
 

 In any case, our Supreme Court has held that rents are not recoverable as an offset to betterments where one would not be entitled to rents in the first instance.
 
 Harriett v. Harriett,
 

 181 N.C. 75
 
 , 78,
 
 106 S.E. 221
 
 , 222 (1921).
 

 The equities in a situation involving tenants in common is similar: Though one tenant in common is "not liable for the use and occupation of the lands, but only for the rents and profits received [from third parties],"
 
 see
 

 Whitehurst v. Hinton,
 

 209 N.C. 392
 
 , 403,
 
 184 S.E. 66
 
 , 73 (1936), co-tenants may otherwise collect rents from an occupying co-tenant when there has been
 
 an actual ouster
 
 by the occupying co-tenant of the non-occupying co-tenants,
 
 see
 

 Roberts v. Roberts,
 

 55 N.C. 129
 
 , 134 (1855).
 

 In the present case, both the principles involving co-tenants and the law under our Betterment Statutes apply. That is, Thomas Harris did not become a co-tenant until after his father's death in 1997. Accordingly, during this time (1993-1997) the co-tenants (as heirs of Mr. Harris, Sr.)
 
 may be
 
 entitled to their pro rata share of the fair rental value of the Property (without Thomas Harris' improvements) to the extent they do not exceed the allowance awarded for the improvements. In other words, the equity afforded to Thomas Harris' daughters for the improvements made to the Property may be subject to an offset in the amount of the benefit Thomas Harris derived from possessing the Property between 1993 and 1997 when he had no right of possession, but rather possessed under color of title.
 

 However, we hold that the co-tenants are
 
 not
 
 entitled to rents for any occupancy by Thomas Harris or his daughters after Mr. Harris, Sr.'s, death in 1997. During that time, Thomas Harris was a co-tenant; and the evidence does not show that there was an actual ouster by him of his siblings. Specifically, an
 
 actual ouster
 
 is "[a] cotenant's clear positive denial of another cotenant's rights in the common property[.]"
 
 Beck v. Beck,
 

 125 N.C.App. 402
 
 , 404,
 
 481 S.E.2d 317
 
 , 319 (1997). The mere fact that the 1993 deed was filed, creating color of title in favor of Thomas Harris, is not enough to constitute
 
 the actual ouster
 
 of the other co-tenants. Rather, "[t]he color must be strengthened by possession,
 
 which must be open, notorious, and adverse
 
 [.]"
 

 *74
 

 Cothran v. Akers Motor Lines, Inc.,
 

 257 N.C. 782
 
 , 784,
 
 127 S.E.2d 578
 
 , 580 (1962) (emphasis added). In the present case, there was no evidence tending to show that Thomas Harris prevented his siblings' access to the Property at any point. Accordingly, we conclude that the portion of the trial court's order denying Plaintiffs' claim for rents and profits during the time of the co-tenancy (i.e. after Mr. Harris, Sr.'s, death in 1997) is supported by
 
 *125
 
 its findings and based on evidence in the record.
 

 C. Contributions
 

 Plaintiffs next argue that the trial court erred in concluding that Thomas Harris' daughters are entitled to contribution for certain property tax and homeowner's insurance expenses paid by Thomas Harris and his daughters between 1993 and 2010. We agree, in part. Specifically, we hold that Thomas Harris' daughters are entitled to contribution for said expenses which accrued
 
 after
 
 Mr. Harris, Sr.'s, death in 1997.
 
 See, e.g.,
 

 Holt v. Couch,
 

 125 N.C. 456
 
 , 460,
 
 34 S.E. 703
 
 , 704 (1899) (holding that a co-tenant who pays taxes and other expenses necessary for the preservation of the property "will have a lien upon the common property to secure such reimbursement"). However, they are not entitled to contribution from
 
 the other co-tenants
 
 for said expenses accruing before Mr. Harris, Sr.'s, death because none of the co-tenants are liable for Property expenses which accrued prior to the time that they became owners.
 

 The 1993 deed being void, Thomas Harris became a co-tenant with his siblings upon their father's death in 1997. Under N.C. Gen.Stat. § 105-363(b), "a cotenant who pays a greater share of the taxes, interest[,] and costs [may] enforce a lien in his favor upon the shares of the other joint owners in ... any [ ] appropriate judicial proceeding."
 
 Knotts v. Hall,
 

 85 N.C.App. 463
 
 , 465,
 
 355 S.E.2d 237
 
 , 239 (internal marks omitted),
 
 aff'd per curiam,
 

 321 N.C. 119
 
 ,
 
 361 S.E.2d 591
 
 (1987). The
 
 Knotts
 
 Court stated that an exception to this rule
 
 may
 
 exist where the co-tenant paying the taxes and costs is in "exclusive possession" of the property.
 
 Id.
 
 at 466,
 
 355 S.E.2d at 239
 
 . The Court cited
 
 Webster's Real Estate Law in North Carolina,
 
 Sec. 117 in support of the view that "a cotenant in
 
 exclusive
 
 possession is not entitled to reimbursement for taxes paid during the time he held the property exclusively."
 

 Id.
 

 (emphasis in original). The Court, however, reasoned that a co-tenant's "sole possession" did not necessarily equate to "exclusive possession."
 
 Id.
 
 at 467,
 
 355 S.E.2d at 240
 
 . The Court went on to hold that there was "no basis for a finding of exclusive possession" where the occupying co-tenant made no attempt to withhold the property from the other co-tenants and where the other co-tenants made no demand to possess the property.
 

 Id.
 

 *75
 
 In the present case, as in
 
 Knotts,
 
 neither Thomas Harris nor his daughters withheld the Property from the other co-tenants, and the other co-tenants never made any demand to possess the Property after Mr. Harris, Sr.'s, death. Accordingly, as in
 
 Knotts,
 
 the trial court did not err in awarding Thomas Harris' daughters an allowance for the taxes and insurance paid by them and their father
 
 during the time they were tenants in common,
 
 as the record tends to show "sole possession," not "exclusive possession."
 
 See
 
 id.
 

 However, Thomas Harris' daughters are not entitled to contribution from the co-tenants for the expenses which accrued prior to Mr. Harris, Sr.'s, death. Neither Thomas Harris nor any of Mr. Harris, Sr.'s, heirs had any ownership interest in the Property prior to Mr. Harris, Sr.'s, death in 1997.
 

 D. Other Arguments
 

 We note that Plaintiffs further argue that the trial court erred in failing to assess costs against Thomas Harris' daughters based on Plaintiffs' contention that it should have been clear to the daughters that their claim for betterments was easily offset by Plaintiffs' claim for rents. However, since we have held that the trial court did not err in denying Plaintiffs' claim for rents, this argument is overruled.
 
 [4]
 

 Also, Plaintiffs contend that the case should be remanded for correction of certain mathematical errors in the trial court's order. The calculation at issue includes the trial court's finding as to the value of the improvements
 
 *126
 
 made by Thomas Harris. However, as we have reversed this finding of value and remanded the matter for the trial court to make new findings, Plaintiffs' argument regarding the mathematical error is moot.
 

 III. Conclusion
 

 The parties were tenants in common in the Property. The Property was partitioned by sale.
 

 The trial court did not err in concluding that Thomas Harris' daughters are entitled to an allowance out of the sales proceeds for the value of the improvements made by their father. However, the trial court erred
 
 *76
 
 in valuing the improvements. On remand, the trial court shall make new findings regarding this value. This value, however, may be offset by the fair market value of the rent of the Property (not including any portion of said fair market rental value attributable to the improvements by Thomas Harris) for the period between the delivery of the 1993 deed and the death of Mr. Harris, Sr., in 1997. The trial court, on remand, shall make findings concerning Plaintiffs' claims for this fair market rental value.
 

 Further, we hold that the trial court did not err in concluding that Thomas Harris' daughters are entitled to an allowance for the taxes and property insurance paid by them and their father which accrued
 
 after
 
 the death of Mr. Harris, Sr.
 

 Any amount remaining from the net proceeds of the partition sale shall be divided among the parties based on their pro rata ownership of the Property.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 Judges GEER and HUNTER, JR., concur.
 

 [1]
 

 The heirs of Mr. Harris, Sr., who had not joined in the filing of the action were subsequently joined as Defendants, being necessary parties to the partition proceeding.
 

 [2]
 

 The trial court also denied Plaintiffs' claim for attorneys' fees. However, on appeal, Plaintiffs make no argument concerning this portion of the order; and, therefore, this issue is abandoned.
 
 See
 
 N.C. R.App. P. 28(b)(2).
 

 [3]
 

 The fact that the improvements may have been made before the co-tenants ever acquired title to the Property (that is, when Mr. Harris, Sr., was still alive and owned the Property) does not change the amount of the allowance assessed against the other co-tenants. The nature of the claim is not personal, i.e., against the person who happened to be the true owner at the time the improvements were made.
 
 Board of Comm'rs of Roxboro v. Bumpass,
 

 237 N.C. 143
 
 , 146-47,
 
 74 S.E.2d 436
 
 , 439 (1953). Rather, it is a right which only accrues when (1) in the case of betterments, the true owner asserts his claim to title,
 
 see
 
 id.,
 

 or (2) in the case of tenants in common, the time of partition,
 
 see
 

 Pope v. Whitehead,
 

 68 N.C. 191
 
 , 199-200 (1873). It is the co-tenants/current owners (and not some prior true owner) who would be unjustly enriched by the improvements without the allowance.
 
 See, e.g.,
 

 Harriett v. Harriett,
 

 181 N.C. 75
 
 , 78,
 
 106 S.E. 221
 
 , 222 (1921) (holding that a remainderman successfully claiming fee simple title to property is liable to the occupier for improvements made during the life tenancy preceding the remainderman's interest).
 

 [4]
 

 Plaintiffs additionally contend that the trial court erred in failing to assess costs against Defendants and in denying their motion for relief from judgment under N.C. Gen.Stat. § 6-21(7) and Rule 11 of the North Carolina Rules of Civil Procedure. However, nothing of record in this appeal gives rise to an inference that the trial court abused its discretion in refusing to tax the costs of this action against Defendants, the prevailing parties. Indeed, Defendants' success on the merits belies the assertion that maintenance of their claims was improper.