Toomer, Judge.
 

 — His Honor (after stating the facts admitted by the pleadings, proceeded) there is undoubtedly a contradiction, and repugnancy in the b< quests contained in this will. The testator first gives
 
 Sal
 
 by name to his son
 
 William.
 
 He then gives her. in the same waj to his daughter
 
 Harriet.
 
 The inquiry is, what was the intention of the testator, as it is to be collected from the face of the will. If such an intention can be ascertained by looking at the will, and it be in violation of no principle of law, it is the duty of the Court to give it effect . In the construction of wills, the testator’s meaning is to be
 
 *285
 
 discovered from the will itself, taking sit rid ’he general'* rules of construction, e:sk¡H;sh«i by former decisions. (Noel v.
 
 Weston, 2 Ves.
 
 &
 
 Bea.
 
 271.) hs cuses of such direct contradiction and ub-olute te¡rguancy, the itt'ention of Use testator cannot be discovered from thu face of the will.
 

 It is manifest, the chattil was
 
 intended
 
 for one or both of Use legatees $ it is not one of those casta, in which the bequ.s' is void for uncertainly. It is then necessary to cstuhiish some i me o! construction, prtscribing who is under such circumstances Intake the legacy, and in what manner, in order to preserve. ihe ]>raco of society, and to pr v< sit future litigation. If we cannot ascertain the
 
 intent
 
 of the testate", by looking at the will, we next inquire what const ruction the law lias imposed on such inconsistent bequests? fis suds case no rule of construction has been established in this díale. We most then resort to the adjudications of that country, from which the elementary principles of our .system of jurisprudence have been derived.
 
 There we
 
 find a great contrariety of ('«pinion, douse thought, that both devices were void for uncertainty.
 
 (Owen
 
 84.) Luid Cofre held, that in two different devises of the same thing, the last should take place; others have concurred with him in saying, that the second devise, revokes the first.
 
 (Cruise Dig.
 
 Tit.
 
 Devise. ch. 9, sec.
 
 22.)
 
 In Paramore v. Yardley, (Plow.
 
 539, 541.) it is said, the legatees shall take as join!-tenants. Of this opinion was
 
 Swinbarne.
 
 In
 
 Ulrick
 
 v.
 
 Litchfield,
 
 (2
 
 Atk.
 
 374,) Lord
 
 Harwicke,
 
 referring to the case of
 
 Paramore
 
 v.
 
 Vardley,
 
 said, ** the reasoning in in
 
 Ploirdeii
 
 is not convincing to me. 1 rather incline to Lord Coke’s,
 
 though the latter cases have taken it otherwise.”
 
 In
 
 Ridoni
 
 v. Pain, (3
 
 Atk.
 
 493.) Lord
 
 Hard-wicke
 
 again says, “ the law presumes that a testator, even in making his will, may vary his intention. As suppose a urns gives a farm in Dale to A and his heirs in one pars, of Ins will, and in another to B and his heirs
 
 *286
 
 it has been held by-the
 
 old books
 
 to bé a
 
 revocation
 
 ; but latterly construed either a
 
 joint-tenancy,
 
 or
 
 tenancy in
 
 common, according to the limitation.” The opinion supported by the greatest number of authorities is, that the two devisees shall take in moieties. (Coke
 
 Litt.
 
 112, b.
 
 note 1
 
 — Cruise’s
 
 Dig. Devise ch.
 
 9,
 
 sec, 22
 
 — Paramore v.
 
 Vardley, Plowden 541
 
 — Anonymous,
 
 Cro. Eliz. 9
 
 — Coke v.
 
 Bullock, Cro.
 
 Jac. 49.) If a thing be given in one part of a will to one, and in another part to another, the de-visees shall take in moieties.
 
 (Edwards
 
 v.
 
 Symons,
 
 6
 
 Taunt.
 
 361.)
 

 I shall not attempt astutely to assign the reasons of these conflicting opinions
 
 ;
 
 nor shall I
 
 vainly
 
 attempt to reconcile them. Distinguished jurists of modern times, with all the wisdom of former ages, and all the lights of experience before them, have sanctioned the opinion expressed in
 
 Plowden,
 
 that the devisees shall take in moieties : rejecting the old doctrines, that the devises are void for uncertainty,’ and that the latter devise is a revocation of the former. I shall adopt the modern opinion, and declare that these legatees take in moieties j solacing myself with the reflection, if it be erroneous, that it is the accepted opinion of modern times — is supported by the greatest number of authorities — and has the sanction of distinguished names.
 

 The Defendant
 
 William Eaton,
 
 alleges, that
 
 Sal
 
 had been given to him, aud put in his possession by the testator, in the year 1803 or 1804, long anterior to the making of the will, was his property when the will was executed, and the testator had no right to dispose of her by his will, and has filed several depositions to establish that fact. But it appears that
 
 William Eaton
 
 has taken a large estate under the will, and has thus made his election.
 

 The general rule is, that a person cannot reject and accept the same instrument--he cannot claim under and against it. It is a rule of law as well as of equity, and
 
 *287
 
 applies to e^ery species of instrument, whether a deed or a will.
 
 (Birmingham
 
 v.
 
 Kirwan
 
 2
 
 Scho.
 
 &
 
 Lef.
 
 449). A person shall not claim an interest under an instrument, without giving full effect to it, as far as he can, rennour-ing any right or property, which would defeat the disposition made in the will. The ground is the
 
 implied condition.
 
 upon
 
 intention,
 
 though from mistake. (Thellus
 
 son
 
 v.
 
 Woodford, 1 3 Ves.
 
 220). A condition is
 
 implied,
 
 either that the devisee shall part with his own estate devised by the will, or shall not take the bounty of the testator, declared in the w ill.
 
 (Broome
 
 v.
 
 Monck
 
 10
 
 Ves.
 
 600.
 
 Andrew
 
 v.
 
 Trinity Hall,
 
 9
 
 do.
 
 533). He shall not defeat the disposition made by the will, and yet take under that instrument. He must make his election.—
 
 Here,
 
 the Defendant
 
 William Eaton
 
 has made his election, and has taken a large estate under the will. He cannot now deny the right of the testator to bequeath
 
 Sal,
 
 but must submit to that disposition of her, which has been made by the will.
 

 It is contended, that the testator, in bequeathing slaves to the Defendant, which bad been given him, long anterior to the making of the will,
 
 did not intend
 
 to interfere with Defendant’s rights under the antecedent gift ; and a deposition has been filed to show such intention. But Defendant has taken a large estate under the will, including much property to which lie had before no title. He has thus made his election, and cannot take both under and against the will. This is a conclusion of law*,, founded on the doctrine of election. It is not necessary now to enquire, whether the Defendant can contradict this Conclusion by parol testimony ; or whether he be not es-topped from denying it. This is not the point of difficulty in the case. The same slave has been bequeathed by one clause of the will to
 
 William,
 
 and by a subsequent clause to
 
 Harriet.
 
 The purpose of introducing the parol testimony is, to show that the testator did not intend to bequeath any interest in
 
 Sal
 
 to the legatee
 
 Harriet,
 
 and.
 
 *288
 
 thus defeat the bequest
 
 to her. Such
 
 evidence will be contradictory to the plain language of the will. The law excludes, from principle and policy, the introduction of parol evidence, to contradict or alter instruments of writing. They are presumed to bo repositories of truth. Principle prohibits si, because such instruments are, in tbeir nature and origin, entitled to higher credit, than that which -appertains to parol evidence. Policy forbids it, because it would be followed by mischievous and inconvenient consequences. (3
 
 Stark, on Ev.
 
 995). The law permits the introduction of parol evidence to explain some cases of ambiguity in instruments of writing.
 
 Latent
 
 ambiguities, such as arc not apparent on the face of the instrument, ¡nay be explained by parol testimony.— But such evidence is inadmissible to explain a
 
 patent
 
 ambiguity, one apparent on trie face of the instrument. (3
 
 StarkieonEv.
 
 1000.) There is a repugnancy in the bequest of the same slave, in one clause to
 
 William,
 
 and in a subsequent clause to
 
 Harriet,
 
 but no ambiguity, and if it be called an ambiguity, it is
 
 patent,
 
 apparent on the face of the instrument j and by the settled rules of law, not susceptible of explanation by parol evidence. It cannot be competent for William, to contradict by parol testimony the intention of the testator, as is plainly expressed in his written will; to contradict the plain language of that will, and thus defeat the bequest to
 
 Harriet,
 
 and deprive, her of that property'which she claimed by a paper title. It is not believed that parol evidence is admissible to show, that the testator did not intend, what he plainly declared in his will.
 
 Lord Hardwicke
 
 says, in
 
 Ulrick
 
 v. Litchfield, (2
 
 Atk.
 
 373) that upon the construction of a will, Courts of Law and Equity admit parol evidence, only in two cases — first, to ascertain the person, where there are two of the same name, or where there has been a mistake in .a Christian or sir-name j the second case is, with regard to resulting trusts relating to personal estates.
 

 
 *289
 
 These are cases of latent ambiguity — ihrre are others which are embraced by the sacie principle.
 

 Per Curiam.
 

 — Declare the Piitsntlff and the Defendant
 
 W'iMiam,
 
 to be entitled to the slave and her increase, la taofoties, and direct an account of the fjreiks of their h'íifCü’!'.