Daniel Wynns died in 1813, leaving a will by which he bequeathed to his daughter Peggy a negro boy. She afterwards married one Northcot, who was the father of the plaintiff, and who died intestate soon after plaintiff's birth. One William Wynns administered upon his estate, and delivered the negro boy to the mother of the plaintiff. She soon afterwards married the defendant Casper, and took her child to live with her. Casper also took the negro boy, and has had him in possession ever since, and has received the profits of his hire and labor. He was also at the expense of raising the plaintiff from his early infancy. The plaintiff arrived at full age in 1841, and filed this bill in March, 1846, alleging that, as the only child of his father, he is entitled to two-thirds of the negro boy; that the executor of his grandfather assented to the legacy and the negro boy was taken into possession by his father, and after his death was, by his administrator, delivered to his (304) mother, to be held by her and the plaintiff as tenants in common; and that the defendant Casper, since his marriage, has held the negro as a tenant in common with the plaintiff, and has received all the profits. The prayer is for a sale of the negro for partition and for an account of the profits.
The defendant denies that the father of the plaintiff reduced the negro into possession and that his administrator delivered the negro to the mother of the plaintiff as tenant in common, and alleges that the negro belonged to his wife, and upon his marriage became his property in severalty. He also insists that if the plaintiff be entitled to two-thirds of the negro and the profits of his hire and labor, a reasonable allowance *Page 220 
should be made for the trouble and expense of raising the plaintiff, and he relied upon the statute of limitations in bar of an account for the profits, except for the three years next before the bill was filed.
The proof is entirely satisfactory that the executor of Daniel Wynns did assent to the legacy, that the father of the plaintiff did reduce the negro into possession, and that his administrator delivered the negro to his widow (who is now the wife of the defendant) for herself and her infant child. The defendant, by his marriage, succeeded to the rights of his wife and held as tenant in common with the plaintiff. The plaintiff is therefore entitled to have the negro sold for partition and is entitled to an account of the profits.
Whether the statute of limitations is a bar to the account, except for the last three years next before the filing of the bill, is a question of more difficulty.
(305) The nonage of the plaintiff accounts for the long delay and rebuts any inference from the length of time and the staleness of the demand. It is not replication to the statute of limitations, as the suit was not brought within three years after full age. It is argued that when the jurisdiction is concurrent, as in matters of account, and not exclusive, as in trusts, a court of equity is as much bound by the statute of limitation as a court of law.
The question is, As the relation of tenancy in common had not ceased, and there was no demand, does this privity or confidential relation prevent the statute from running before the bill was filed? or are tenants in common always in an adversary position, so as to set the statute in motion from the beginning, and keep it running all of the time, and thus cut off any item the instant three years pass, and compel a settlement or a suit every three years as long as the relation continues?
If the first proposition be true, the plaintiff is entitled to recover for the whole time. If it be false, and the second proposition be true, the defendant is protected, except for the three years next before the bill was filed.
We think from principle and the reason of the thing that the first proposition is true. The statute of Anne, where one tenant in common receives all of the profits, makes him the bailiff of his cotenant, and gives the action of account against him, as bailiff, for what he receives over his share. Before this statute, although account lay between coparceners, it did not between joint tenants and tenants in common, unless there was an express agreement that one should act as the bailiff of *Page 221 
the other, and account when required to do so. The effect of the statute was to create such an obligation to account as bailiff, in the absence of any express agreement, from the mere relation of privity of the cotenants. It will hardly be contended by any that when there is an express agreement that one shall act as bailiff and account when (306) required so to do (say for ten years or during the time the tenancy in common continues), that the the statute of limitations begins to runas soon as the bailiff begins to act; and yet if it does not begin to run at the first instant, there can be no reason why it should begin at any other time, or at one time rather than another, until the relation of principal and bailiff ceases, or an account is called for and the right is denied. If there be two copartners, the statute does not run into a dissolution, for one is the agent of the other, and there is a mutual confidence. So as to all other agencies, and a bailiff is an agent toact, receive and account, as a receiver is an agent to receive and account, and until the relation ceases or an account is called for and refused, there is no cause of complaint or right of action for the statute to act on. The statute begins to run when a cause of action accrues, and a cause of action cannot accrue until one withholds what the other demands or is presumed to demand, and in agency a demand is not presumed until the relation ceases. The "clipping process," or the cutting off item by item with "the scythe of time," only applies to cases where wrongs are committed time after time, as in the case of one who wrongfully takes possession of the land of another and is considered to commit trespasses day after day; or where rights are created time after time, and a performance is withheld without any confidential relation to justify it; as if one delivers an article to be paid for presently, and afterwards, time after time, delivers other articles to be paid for in the same way, the price of each article being presently due, the seller is presumed to demand it, like any other debt, and the neglect to pay it is "withholding a right," so as to put the statute in motion as to each article at its delivery; but if the price is not to be paid until it is required by the seller, there is no withholding until a demand; so if an account is not to be rendered until a confidential relation is determned [determined] or it is required, for the like reason, there is no withholding of a right until such time as the relation ceases or an (307) account is called for and denied.
As to bailiffs, constituted by agreement of the parties, the law is clear and cannot be questioned. Does the same rule apply to bailiffs made such by the statute? No reason can be assigned for making a difference; and no such distinction is mentioned in any of the books. In fact, the statute enacts that the tenant who receives the profits shall account as bailifffor what he receives over his share, thus showing the intent to be that he shall account in the same way as a bailiff by agreement, *Page 222 
except that the latter is to account for what, by due diligence, he might have received as well as what he does receive; whereas the statute is careful to restrict the liability to "what is received over his share." This is the only difference, and it has not bearing on the statute of limitations; with this difference, the declaration is the same against both. Mills, 208.
So, upon the reason of the thing, the statute of limitations does not commence running in the case of tenants in common until the relation is determined by partition, or there is a demand to be let into possession and an actual ouster, or a demand for an account and the right is denied. There cannot well be such an adversary position as to make the statute run in reference to the right to an account of the profits when it does not also run in reference to the right of possession, which can only be when there is an ouster, really made or presumed from lapse of time.
It remains to inquire how the question stands upon authority; and here we are met at the threshold with Wagstaff v. Smith, 17 N.C. 264;s. c. 39 N.C. 1. In December, 1832, an account of the profits received by a tenant in common during the whole time is ordered, the (308) Court holding that the statute of limitations did not commence running until partition. Chief Justice Henderson thought the matter so plain upon general reasoning as not to call for any authority. The question came up on a petition to rehear, after the death of that able and profound jurist, and it was decided in December, 1833, that the statute commenced running from the time the relation commenced, and so the account was cut off, except for a few months prior to the partition, as the suit was not brought until near three years after partition.
Our duty is to decide between the two conflicting decisions. It is seen that the reason of the thing is in favor of the first division. And the second can only be sustained by weight of authority; and yet but a single case is cited, and that as not being in point, but as furnishing an inference from the manner of pleading, which is a legitimate mode of ascertaining the law, and has the high sanction of Lord Coke.
Judge Gaston delivered the opinion. He assumes that the receipt of the profits by one imposes upon him an immediate accountability to the other for his share, and infers from the wording of the statute of Anne that a cause of action may arise while the common holding continues. This may be conceded. He then argues: "The declaration in Godfrey v. Saunders, 3 Wilson, 74, after setting forth the receipts of the rents, issues, and profits, and the obligation to account, avers as a breach a failure to account, although often required so to do." Now, it is a settled principle in pleading that when a cause of action does not arise until a special *Page 223 
demand, the general allegation, "often required so to do," will not (309) answer; hence the cause of action did arise and the statute commenced running before a demand.
Upon examination, Godfrey v. Saunders does not answer the purpose for which it was cited. The declaration sets forth that the defendant was the bailiff of the plaintiff from 1 June, 1754, until 1 May, 1775, and as bailiff had received a large quantity of coral beads to be merchandised and made profit of, and to render an account thereof to the plaintiff when afterwards required thereto; yet he did not render the account, although "often required so to do." The action was brought eighteen years after 1 May, 1755, at which time the agency ceased. There was obviously no occasion for a demand. The statute had been running from May, 1755. The defendant relied on it as one of his pleas, and it would have been a bar but for the replication that the dealing was between merchant and merchant. It is, then, only an authority to show that when the agency is at an end, "saepius requisitus" will answer. It also shows that the statute begins to run from the determination of the agency. It is apparent from its irrelevancy and from the words "rents, issues, and profits," which are not contained in the declaration, that the able and very learned judge had not examined the case with the pains he was in the habit of bestowing upon every subject. In 3 Chitty Pleading, 1297, a precedent is found which is more in point. The declaration sets out that the plaintiff and defendant were tenants in common from ___ day of _______, A. D. ____, from thence for a long space of time, to wit,hitherto (that is, up to the time of the action), during all of which time defendant received, etc., as bailiff, to account for what he received more than his share, etc., and although afterwards, to wit, or etc., at, etc., (venue) required to account, refused, etc. Here is a special demand which was traversable. But the conclusion which is drawn does not follow, admitting that in such a case the general allegation of "saepiusrequisitus" is proper; for the issuing of the writ is in many cases a sufficient demand, although the cause of action is not complete until the writ issues, and the statute does not run until a demand. A precedent of this kind is found in 1 Wentworth Pleading, 83. The (310) declaration alleges a tenancy in common from 1 January, 1864, and continually until the day of exhibiting the bill, and avers a breach by failing to account, "although often requested so to do." This shows that the bringing of suit was a sufficient demand, if the defendant submits to account, and pleads that he was always ready. The fact of there being no special demand would not affect the action; if he denies his liability, a special demand would have been useless. So in a case of a promise to *Page 224 
pay on demand. A writ may issue, and is held to be a sufficient demand, although in such case the statute does not run until a demand. This is referred to in the conclusion of the decision under discussion, and such is the settled law.
There are two exceptions to this "settled principle in pleading."
The form of pleading the statute is much relied on in support of the main argument. The form in the case from Wilson is: "There was not any open and current account between the plaintiff and defendant at any time within six years before the issuing of the original writ." This conflicts with the argument. No reference is made to the case from which the form quoted is taken. It is in substance that no profits had been received at any time within six years before the writ issued. If that form had been used in the case under discussion, the plea would not have been true, for profits had been received within three years. In the case before us the defendant has continued in receipt of the profits up to the present time. The perception thereof ought to have saved the whole account, because it showed that the connection had not ceased more than three years before the suit was commenced. In Green v. Caldcleugh,18 N.C. 320, although it is held that the last item in an open account does not save the whole, yet it is distinctly admitted that such would be the case where there are mutual current accounts, because of the (311) confidence reposed. The next support to the argument is drawn from the practice in equity of not carrying the account of rents and profits farther back than six (three) years. That practice is confined to "ejectment cases," as they are called, where the possession is adverse. But the court, having taken jurisdiction upon some peculiar ground, gives complete relief by decreeing an account of mesne profits, and the analogy is taken from the statute as to actions of trespass quare clausum fregit, and not as to the action of account. There is no case of a decree for partition and an account of profits in which it is intimated that the time is limited to six (three) years before the filing of the bill. The next support is drawn from the idea that the exception as to accounts between merchant and merchant would have been necessary if in all cases of confidential dealing the statute did not run until the connection had ceased, or a demand. The case in Wilson is an instance, among many, where the exception (taking the law to be that the statute does not run until the connection ceases) was found by the plaintiff not to have been unnecessary, and it served his turn as a replication to the statute. Sherman v. Sherman, 2 Ver., 296, is another instance. Buchanan v. Parker, 27 N.C. 597, is in point to show that where confidence is reposed in one as agent, the statute does not run until a demand, *Page 225 
and in Welford v. Liddall, 2 Ves., Sr., 400, it is taken for granted that the statute cannot be pleaded until the dealings are over or the connection dissolved.
The last argument in support is the inconvenience from the loss of vouchers. Courts of equity avoid the supposed inconvenience by refusing to take jurisdiction of stale demands, giving to length of time, not the effect of a positive bar, but of a presumption of satisfaction, unless it is accounted for. The case of Sherman, before cited, is an instance.
After a careful examination, we have not been able to find a single other case in which the statute has been pleaded or held to (312) be a bar to an account for the profits received by a tenant in common during the time of the common holding. The nearest approximation to it is adictum ascribed to Lord Hardwicke in Prince v. Heyden, 1 Atk., 493. That was a bill by the administrator of one of the lessees of a term of years, against the surviving lessee, for a share of the profits since the death of his intestate, a period of nineteen years. The statute of limitations was not pleaded, and the only question was whether the lessees took as tenants in common or as joint tenants, in which case the defendant would be entitled by survivorship. It was held to be a case of tenancy in common, and an account for the profits during the whole time was decreed.
The reporter makes his lordship say: "It has been insisted on for thedefendant, he ought to account only from the time of the bill filed. Now, in the case of joint tenants or parceners, there is a mutual trust between them, and they are accountable to each other without regard to time. It is otherwise in the case of tenants in common, and this is an adversary possession maintained by the defendant against the plaintiff ever since the death of his intestate." His lordship concludes: "I am of opinion the defendant must account for rents and profits from the death of the intestate. The nature of the estate does not admit of an adversary possession in regard to the privity that is between tenants in common." It is probable the reporter does injustice to his lordship by ascribing to him what he intended merely to recite as having been insisted on for the defendant. But at all events, the first remarks were uncalled for, and out of the case, as the statute was not pleaded. They are inconsistent with the concluding remarks, and they are self-contradictory. The statute of Anne gives the action of accounts to joint tenants as well as to tenants in common; and if joint tenants are liable to account for (313) the whole time the tenancy continues, such must also be the law as to tenants in common. The statute puts them on a footing with joint tenants, and there is a privity or mutual confidence, by reason of which the statute makes one the baififf [bailiff] of the other so long as the relation continues. *Page 226 
Upon principle and the uniform current of authority, the decision inWagstaff v. Smith, supra, 1833 (which we have felt it to be our duty to examine with some degree of particularity), cannot be sustained.
It must be declared to be the opinion of this Court that the plaintiff is entitled to an account of the profits received by the defendant from the labor or hire of the slave during all the time he had him in possession. A reasonable allowance will be made for the trouble and expense of the defendant in raising the plaintiff, subject to a deduction for the services of the plaintiff, if he rendered any, during his minority, by working for the defendant. There must be a reference.