DOROTHY MAE STONE LOVETT, VICTORIA STONE PHIPPS, I. L. STONE AND BILLY STONE v. DEWEY STONE.

(Filed 15 January, 1954.)

**1. Trial § 55—**

Where the parties consent to trial by the court without a jury, the findings of the court are as conclusive as the verdict of a jury if they are supported by evidence.

**2. Infants § 10—**

Since the court has the discretionary power to appoint any person whom it considers suitable next friend of an infant plaintiff, whether such person is related or not to the infant, the fact that application for appointment is made by a non-relative of the infant does not affect the efficacy of the appointment of such person upon proper findings. Rule of Practice in the Superior Courts No. 16.

**3. Appeal and Error § 38—**

Unless the contrary is made to appear, it will be presumed that judicial acts and duties have been duly and regularly performed. So, where the court grants the application of a non-relative of the infant for appointment as next friend, it will be presumed that the court made the appointment because no person closely connected with the infant would apply.

**4. Infants § 10—**

Where an infant plaintiff attains his majority during the prosecution of the cause, he ratifies the appointment of the next friend by continuing the prosecution of the action in his own right.

LOVETT *v.* STONE.

**5. Wills § 44—**

Where it is apparent from the will that testator intended that a beneficiary thereunder should not enjoy the devise or bequest unless such beneficiary relinquished a right or claim of his own which would defeat the full effect and operation of the will, such person is put to his election.

**6. Same—Heir electing to take under will takes quality of estate as limited by the will.**

Defendant owned two-thirds interest in fee in a part of a certain tract of land which he had inherited from his father. Thereafter his grandfather died leaving a will devising to him a life estate in the entire tract with remainder to his children, with further provision that defendant's brother, in order for the brother to take other lands under the will, should convey to defendant the other one-third interest in the part of the tract. Defendant's brother conveyed to him the one-third interest in the part of the tract "in full compliance with the terms . . . of the last will." Defendant manifested his election to take under the will by accepting and using the tract actually devised to him for life. *Held:* By his election to take under the will defendant's estate was limited to a life estate in the tract of land, which limitation was binding upon him and those claiming under him with notice.

**7. Deeds § 13a—**

A grantor cannot convey an estate of greater dignity than the one he has, and when he has only a life estate, his deed to the land, even though in the form of a conveyance in fee simple, conveys only his life estate.

**8. Adverse Possession § 4i—**

The grantee in a deed conveying only the life estate of the grantor cannot hold adversely to the remaindermen until the death of the grantor, and where one of the remaindermen is then under the disability of infancy the grantee cannot acquire title by adverse possession against him under color of the deed until after the lapse of seven years from the removal of the disability. G.S. 1-38.

**9. Ejectment § 20—**

The owner of a life estate executed deed purporting to convey the fee in the lands. The grantee in the deed admitted he had been in continuous possession since the execution of the deed, and acquired title by adverse possession as against all of the remaindermen but one, who was under disability as an infant until the institution of the action. *Held:* Upon recovery by this remainderman of his share of the land, he is entitled to recover also his proportion of the rents and profits against defendant, first in the character of a disseizor and then in the character of a tenant in common.

**10. Betterments § 4—**

Where the grantee knows that his grantor has only a life estate in the lands and nevertheless accepts deed in form sufficient to convey fee simple title, and makes improvements upon the land, he may not recover for such betterments placed on the land as against a remainderman, since such improvements were not made under the belief that his color of title to the interest of the remainderman was good. G.S. 1-340.

APPEAL by defendant Dewey Stone from *Grady, Emergency Judge* at August Term, 1953, of ROBESON.

Civil action involving the title to realty.

The pleadings put in issue the title, the right of possession, and the rental value of a tract of land known as the H. J. Stone tract, which contains "50 acres, more or less," and is located in Britt's Township, Robeson County, North Carolina. The cause was tried by Judge Grady without a jury at the August Term, 1953, of the Superior Court of Robeson County pursuant to the consent of the parties entered in the minutes. Both sides offered testimony at the trial. Judge Grady found that the defendant Dewey Stone had acquired title to the three of the four undivided shares claimed by the plaintiffs Dorothy Mae Stone Lovett, Victoria Stone Phipps, and I. L. Stone by adverse possession under color of title during the seven years ending on 20 January, 1952, and entered judgment accordingly. These plaintiffs did not appeal. As a consequence, this appeal is concerned solely with the one-fourth undivided interest claimed by the plaintiff Billy Stone.

When the facts placed in evidence by the plaintiffs and consistent clarifying facts presented in evidence by the defendant are interpreted in the light most favorable to the plaintiff Billy Stone, they make out this factual case:

1. On 21 October, 1889, Harvey J. Stone conveyed the H. J. Stone tract to Alexander Stone in fee simple.

2. On 9 November, 1899, Alexander Stone conveyed a part of the H. J. Stone tract, to wit, 20 acres thereof, to his son, Ira Lennon Stone, in fee simple. This part of the H. J. Stone tract is hereafter called the 20 acres.

3. Ira Lennon Stone died intestate during 1905, survived by three infant children, namely, Hector Alexander Stone, the father of the four plaintiffs; Dewey Stone, the defendant in this action; and Artemissia Stone, who inherited the 20 acres in equal shares as tenants in common. Artemissia Stone subsequently married John Burney.

4. After her arrival at legal age, to wit, on 18 June, 1921, Artemissia Stone Burney and her husband conveyed her one-third undivided interest in the 20 acres to her brother, Hector Alexander Stone, in fee simple.

5. Alexander Stone died testate, seized in fee simple of all of the H. J. Stone tract except the 20 acres, a farm known as the English Rice farm, and other properties. Subsequent to his death, to wit, on 4 February, 1928, the will of Alexander Stone was duly admitted to probate in the Superior Court of Robeson County.

6. Alexander Stone, who knew the state of the title to the 20 acres, extended certain benefits to his grandsons, Hector Alexander Stone and the defendant Dewey Stone, by Items 5 and 6 of his will.

7. Item 5 is couched in these words: "I hereby give and .devise unto my grandson, Hector Alexander Stone, during the term of his natural life and after his death to be equally divided among his children the tract of land known as the H. J. Stone tract, except about 10 acres which will be disposed of in another section of this will, and also I devise unto my said grandson . . . the sum of $500.00." Alexander Stone did not undertake to dispose of any part of the H. J. Stone tract in any other section of his will. Consequently, Item 5, in final result, embraced all of the H. J. Stone tract. (See, in this connection, *Bartlett v. Lumber Co.,* 168 N.C. 283, 84 S.E. 267.)

8. Item 6 is thus phrased: "I give and devise unto my grandson, Dewey . . . Stone, during the term of his natural life and then to his children in fee simple the tract of land known as the English Rice land, except what lies on South west side of big ditch . . . I direct that the said Dewey . . . Stone . . . shall sign his brother, Hector Alexander Stone, a deed to the lands owned by his father, I. L. Stone, deceased, and his failure to sign said deed and comply with this request . . . will forfeit his right to his entire interest in my estate." When he referred to "the lands owned by . . . I. L. Stone, deceased," the testator meant the 20 acres.

9. After the will of their grandfather, Alexander Stone, had been admitted to probate, Hector Alexander Stone and the defendant Dewey Stone became cognizant of its provisions. Hector Alexander Stone, acting with such knowledge, accepted, used, and enjoyed the entire H. J. Stone tract, and the defendant Dewey Stone, acting with such knowledge, accepted, used, and enjoyed the portion of the English Rice farm devised to him. Moreover, the defendant Dewey Stone deeded his one-third undivided interest in the 20 acres included in the H. J. Stone tract to Hector Alexander Stone "in full compliance with the terms and stipulations of the last will and testament of Alexander Stone."

10. Some years later, to wit, on 5 October, 1940, Hector Alexander Stone made a deed whereby he professed to convey the H. J. Stone tract to the defendant Dewey Stone in fee simple. Since that time, Dewey Stone has adversely possessed the tract under known and visible lines and boundaries and under the deed from Hector Alexander Stone; has taken and devoted to his own use all of the profits arising from the tract; and has made improvements on the tract. Dewey Stone did these things with full knowledge of the provisions of Items 5 and 6 of the will of Alexander Stone and the acceptance by Hector Alexander Stone and himself of the benefits extended to them by these items. The rental value of the interest claimed by the plaintiff Billy Stone in the H. J. Stone tract has been $200.00 yearly during the times, subsequent to 20 January, 1945, Dewey Stone has occupied the tract.

11. Meanwhile, to wit, on 20 January, 1945, Hector Alexander Stone died, leaving him surviving four children, namely, the plaintiffs Dorothy Mae Stone Lovett, Victoria Stone Phipps, I. L. Stone, and Billy Stone.

12. This action was brought on 19 January, 1953. Since he was an infant without general or testamentary guardian at that time and did not attain his legal majority until after the trial of the action in the Superior Court, to wit, on 23 September, 1953, the plaintiff Billy Stone sued in this action until he reached his legal age through his next friend, John Wishart Campbell, a disinterested, reputable, and suitable person not closely connected with Billy Stone, who was appointed to act in that capacity by an order entered by the court upon his own written application after due inquiry as to his fitness.

Judge Grady made specific findings of fact in respect to the claim of the plaintiff Billy Stone conforming to the matters recited in numbered paragraphs 1 through 12. He then concluded and adjudged in detail that the plaintiff Billy Stone was the owner in fee simple of a one-fourth undivided interest in the H. J. Stone tract; that the plaintiff Billy Stone was entitled to recover $200.00 of the defendant Dewey Stone for each year of his occupancy of the H. J. Stone tract subsequent to 20 January, 1945; and that the defendant Dewey Stone was not entitled to recover anything of the plaintiff Billy Stone on account of any improvements made by Dewey Stone on the H. J. Stone tract. The defendant Dewey Stone excepted to the portions of Judge Grady's judgment containing these findings, conclusions, and adjudications, and appealed, assigning errors.

*Robert Weinstein, Frank D. Hackett, and McLean & Stacy for plaintiff, Billy Stone, appellee.*

*Varser, McIntyre & Henry for defendant, Dewey Stone, appellant.*

ERVIN, J. The defendant makes these assertions by his assignments of error:

1. The trial judge committed error in holding that John Wishart Campbell was properly appointed next friend of the plaintiff Billy Stone.

2. The trial judge committed error in refusing to dismiss the claim of the plaintiff Billy Stone upon a compulsory nonsuit.

3. The trial judge committed error in finding, concluding, and adjudging that the plaintiff Billy Stone is the owner in fee simple of a one-fourth undivided interest in the land in controversy.

4. The trial judge committed error in admitting evidence of the rental value of the land in controversy during its occupancy by the defendant subsequent to the death of Hector Alexander Stone.

5. The trial judge committed error in finding, concluding, and adjudging that the plaintiff Billy Stone is entitled to recover of the defendant one-fourth of the value of the rents and profits of the land in controversy during its occupancy by the defendant subsequent to the death of Hector Alexander Stone.

6. The trial judge committed error in finding, concluding, and adjudging that the defendant is not entitled to recover anything of the plaintiff Billy Stone on account of improvements made by him upon the land in controversy.

We will consider these assignments of error in the order of their statement. Before taking up this task, we pause to note that the findings of fact of the trial judge harmonize with the evidence at the trial, and are binding on the parties on this appeal under this rule: Where the parties consent to trial by the court without a jury, the findings of the court are as conclusive as the verdict of a jury if they are supported by evidence. *Poole v. Gentry,* 229 N.C. 266, 49 S.E. 2d 464.

Proceedings for the appointment of a next friend for an infant plaintiff are regulated by this rule of court: "In all cases where it is proposed that infants shall sue by their next friend, the court shall appoint such next friend, upon the written application of a reputable, disinterested person closely connected with such infant; but if such person will not apply, then upon the like application of some reputable citizen; and the court shall make such appointment only after due inquiry as to the fitness of the person to be appointed." Rule 16, Rules of Practice in the Superior Court.

The answer of the defendant challenged the validity of the order appointing John Wishart Campbell next friend of the plaintiff Billy Stone solely upon the ground that it was made by the court upon the written application of Campbell, a non-relative, rather than upon the written application of some "person closely connected with such infant."

Since the next friend of an infant plaintiff is an officer of the court subject to judicial supervision (*Tate v. Mott,* 96 N.C. 19, 2 S.E. 176), and since an infant plaintiff who sues by a next friend is as much bound by the judgment of the court as an adult (*Settle v. Settle,* 141 N.C. 553, 54 S.E. 445), it may be argued with much reason that a defendant has no legal standing entitling him to question the court's selection of a next friend for an infant plaintiff. *Carroll v. Montgomery,* 128 N.C. 278, 38 S.E. 874.

Be this as it may, the trial judge did not err in rejecting the challenge to the appointment in the case at bar. His ruling finds complete support in the established procedural rule that the court possesses the overriding discretionary power to appoint any person whom it considers suitable, whether related or not, to act as next friend of an infant plaintiff. Mc-

Intosh: North Carolina Practice and Procedure in Civil Cases, Section 253. Besides, the present record warrants the conclusion that the court paid strict heed to the rule of court in appointing a next friend in the instant case. Under the law of evidence, it is presumed unless the contrary appears that judicial acts and duties have been duly and regularly performed. *Henderson County v. Johnson,* 230 N.C. 723, 55 S.E. 2d 502; *Smith v. Smith,* 226 N.C. 506, 39 S.E. 2d 391; *Freeman v. Morrison,* 214 N.C. 240, 199 S.E. 12; *McKellar v. McKay,* 156 N.C. 283, 72 S.E. 375; *Harris v. Brown,* 123 N.C. 419, 31 S.E. 877; *Pearle v. Folsom,* 2 N.C. 413. As the contrary does not appear in this case, it must be assumed that the court made the appointment of the next friend upon the written application of Campbell because no person closely connected with the plaintiff Billy Stone would apply. In passing from this phase of the appeal, we indulge the observation that this question may now be considered to be moot. The plaintiff Billy Stone has attained his legal majority since the trial in the Superior Court, and has ratified the proceedings had in his behalf there by continuing the prosecution of the cause in his own right. *Hicks v. Beam,* 112 N.C. 642, 17 S.E. 490.

The assignments of error in the second and third categories present the same problems and will be considered together.

These problems admit of ready solution if proper heed is paid to the significant circumstances that the testator Alexander Stone owned all of the H. J. Stone tract except the 20 acres, that the devisee Hector Alexander Stone owned a two-thirds undivided interest in the 20 acres, and that the devisee Dewey Stone owned the remaining one-third undivided interest in the 20 acres.

When the will of the testator Alexander Stone is read in the light of these significant circumstances, it is manifest that this case calls into play the doctrine of election. This doctrine has been thus phrased by a text writer: "Election is the obligation imposed upon a party to choose between two inconsistent or alternative rights or claims in cases where there is a clear intention of the person from whom he derives one that he should not enjoy both, the principle being that one shall not take any beneficial interest under a will, and at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will." 69 C.J., Wills, section 2330. This statement of the doctrine of election finds full sanction in our decisions. *Rouse v. Rouse,* 237 N.C. 492, 75 S.E. 2d 300; *Trust Co. v. Burrus,* 230 N.C. 592, 55 S.E. 2d 183; *Lamb v. Lamb,* 226 N.C. 662, 40 S.E. 2d 29; *Benton v. Alexander,* 224 N.C. 800, 32 S.E. 2d 584, 156 A.L.R. 814; *Bank v. Misenheimer,* 211 N.C. 519, 191 S.E. 14, 110 A.L.R. 1310; *Peel v. Corey,* 196 N.C. 79, 144 S.E. 559; *Craven v. Caviness,* 193 N.C. 311, 136 S.E. 705; *McGehee v. McGehee,*

189 N.C. 558, 127 S.E. 684; *Royal v. Moore,* 187 N.C. 379, 121 S.E. 666; *Brown v. Brown,* 180 N.C. 433, 104 S.E. 889; *Elmore v. Byrd,* 180 N.C. 120, 104 S.E. 162; *Tripp v. Nobles,* 136 N.C. 99, 48 S.E. 675, 67 L.R.A. 449; *Syme v. Badger,* 92 N.C. 706; *Isler v. Isler,* 88 N.C. 581; *Sigmon v. Hawn,* 87 N.C. 450; *Weeks v. Weeks,* 77 N.C. 421; *Flippin v. Banner,* 55 N.C. 450; *McQueen v. McQueen,* 55 N.C. 16, 62 Am. D. 205; *Robertson v. Stephens,* 36 N.C. 247; *Melchor v. Burger,* 21 N.C. 634; *Wilson v. Arny,* 21 N.C. 376; *Field v. Eaton,* 16 N.C. 283.

The testator Alexander Stone clearly intended his will to operate so as to vest all of the H. J. Stone tract in Hector Alexander Stone for life with remainder in equal shares in the children of Hector Alexander Stone in fee simple. Items 5 and 6 were designed to effect this intention. The testator did these two things by Item 5: (1) He actually gave all of the H. J. Stone tract except the 20 acres to Hector Alexander Stone for life with remainder in equal shares to the children of Hector Alexander Stone in fee simple; and (2) he professed to make the same disposition of the 20 acres, which were owned by Hector Alexander Stone and the defendant Dewey Stone in these proportions: Hector Alexander Stone, a two-thirds undivided interest; and Dewey Stone, a one-third undivided interest. By Item 6, the testator devised a life estate in a part of his English Rice farm to Dewey Stone upon the express condition that Dewey Stone should convey his one-third undivided interest in the 20 acres to Hector Alexander Stone to the end that it might be enjoyed by Hector Alexander Stone for life and his children in remainder in accordance with the provisions of Item 5.

Hector Alexander Stone and Dewey Stone knew the contents of the will. Dewey Stone elected in express terms to take under the will. He manifested his election by accepting and using the part of the English Rice farm devised to him for life, and by deeding his undivided interest in the 20 acres to Hector Alexander Stone "in full compliance with the terms and stipulations of the last will and testament of Alexander Stone." Hector Alexander Stone could not set up his right to the fee simple ownership of the 20 acres without defeating the provision of Item 5 specifying that his children should take the remainder in the 20 acres in equal shares and in fee simple. Hector Alexander Stone was, therefore, compelled by the will to choose whether he would claim fee simple ownership of the 20 acres, or renounce the remainder in the 20 acres and take in lieu thereof that which the testator gave him, namely, a life estate in all of the H. J. Stone tract except the 20 acres. He elected to take under the will, and manifested his election by accepting, occupying, and using for a number of years the part of the H. J. Stone tract actually devised to him for life. *Craven v. Caviness, supra; Hoggard v. Jordan,* 140 N.C. 610, 53 S.E. 220, 4 L.R.A. (N.S.) 1065; *Brown v. Ward,* 103 N.C. 173, 9 S.E.

300; 57 Am. Jur., Wills, Section 1538; 69 C.J., Wills, Sections 2396, 2398. Inasmuch as he elected to take under the will, Hector Alexander Stone and those claiming under him with notice were bound by the testamentary provision, which limited his interest in all of the H. J. Stone tract to a life estate, and gave the remainder in fee in all of that tract to his children in equal shares. *Brown v. Ward, supra;* 69 C.J., Wills, Section 2429. This being true, Hector Alexander Stone had a life estate in the H. J. Stone tract subsequent to his election to take under the will.

A grantor cannot convey to his grantee an estate of greater dignity than the one he has. Although Hector Alexander Stone professed to convey the H. J. Stone tract to Dewey Stone in fee simple, his deed of 5 October, 1940, transferred nothing to Dewey Stone except his life estate. *Eason v. Spence,* 232 N.C. 579, 61 S.E. 2d 717. Since a person occupying land under a deed effective only as to the life interest does not hold adversely to the remaindermen prior to the death of the life tenant, the possession of the H. J. Stone tract by the defendant Dewey Stone did not become adverse to the four plaintiffs until the death of Hector Alexander Stone, which occurred on 20 January, 1945. *Sprinkle v. Reidsville,* 235 N.C. 140, 69 S.E. 2d 179; *Eason v. Spence, supra.* The plaintiff Billy Stone was under the disability of infancy at that time, and his disability was not removed until after the commencement of this action. As a consequence, the adverse possession of the H. J. Stone tract by the defendant Dewey Stone does not operate as a bar against the plaintiff Billy Stone, who still owns the one-fourth undivided interest given him by Item 5. G.S. 1-38; McIntosh: North Carolina Practice and Procedure in Civil Cases, Sections 107, 108.

It necessarily follows that the assignments of error in the second and third categories are untenable.

The plaintiff Billy Stone has been entitled to one-fourth of the rents and profits of the H. J. Stone tract ever since 20 January, 1945, when Hector Alexander Stone, the life tenant, died. The defendant Dewey Stone converted this share of the rents and profits to his own use, and thereby rendered himself liable to the plaintiff Billy Stone in the character of a disseizor for the part of the share accruing before the ripening of his title to the interests in the tract claimed by the other three plaintiffs, and in the character of a tenant in common for the part of the share accruing after that event. *Northcot v. Casper,* 41 N.C. 303; *Camp v. Homesley,* 33 N.C. 211; *Holdfast v. Shepard,* 31 N.C. 222; 28 C.J.S., Ejectment, Section 131; 62 C.J., Tenancy in Common, Section 65. As the plaintiff Billy Stone was under the disability of infancy at the time of the accrual of his claim against the defendant Dewey Stone for his share of the rents and profits, and did not reach the age of twenty-one years until after the commencement of this action, the trial judge did not

err in finding, concluding, and adjudging that the plaintiff Billy Stone was entitled to recover of the defendant Dewey Stone the value of his share of the rents and profits accruing upon the H. J. Stone tract subsequent to 20 January, 1945. McIntosh: North Carolina Practice and Procedure in Civil Cases, Sections 107, 108. Moreover, the testimony of the witnesses for the plaintiffs as to the rental value of the land in controversy during this period was rightly received. *Perry v. Jackson,* 88 N.C. 103. The testimony was limited to the H. J. Stone tract which is described in somewhat specific terms in the second paragraph of the complaint. The defendant admitted in express terms in the third paragraph of his answer that he was "in the . . . possession of the lands described in the second paragraph" of the complaint.

The trial judge found, concluded, and adjudged with correctness that the defendant Dewey Stone was not entitled to any offset or recovery against the plaintiff Billy Stone on account of the improvements made by him on the H. J. Stone tract. This is true for the very simple reason that the defendant Dewey Stone did not make the improvements under the belief that his color of title to the interest of the plaintiff Billy Stone was good. G.S. 1-340; *Rogers v. Timberlake,* 223 N.C. 59, 25 S.E. 2d 167; *Pritchard v. Williams,* 181 N.C. 46, 106 S.E. 144. The reverse is true. The defendant Dewey Stone was familiar with the provisions of Items 5 and 6 of the will of his grandfather, Alexander Stone, and the actions taken by him and his brother, Hector Alexander Stone, to carry these testamentary provisions into effect. He knew that the deed of 5 October, 1940, passed nothing to him except the life estate which Hector Alexander Stone elected to take under the will of Alexander Stone, and that in consequence the color of title afforded by it to him in respect to the interest of his infant nephew, the plaintiff Billy Stone, was not good.

For the reasons given, the provisions of the judgment challenged by this appeal are

Affirmed.