E. RAY ETHERIDGE AND FRED G. ETHERIDGE v. DOC HORACE ETHERIDGE, JR.

No. 781SC341

(Filed 1 May 1979)

1. **Tenants in Common § 3; Evidence § 11— action to recover rents and profits—affidavits—exclusion by Dead Man's Statute—relevancy**

   In an action to recover for rents and profits for the two years after the death of a landowner, who was the mother of plaintiffs and defendant, an affidavit by defendant which incorporated by reference the averments contained in defendant's unverified answer was inadmissible under the Dead Man's Statute, G.S. 8-51; and though an affidavit by defendant's son concerning a contract to rent the land prior to landowner's death was not inadmissible pursuant to the Dead Man's Statute, it was not relevant to this action and was properly excluded by the trial court.

2. **Tenants in Common § 3— action to recover rents and profits—ouster—amendment of counterclaim properly denied**

   In an action to recover rents and profits for the two years after the death of the landowner, who was the mother of plaintiffs and defendant, the trial court did not abuse its discretion in denying defendant permission to amend his counterclaim to allege ouster from the homeplace, since defendant took nothing under his mother's will and took pursuant to his father's will only that property which his father was allotted after the father's dissent from the mother's will, and that property did not include the homeplace.

3. **Tenants in Common § 3— action to recover rents and profits—proof of ouster not required**

   Proof of ouster of a tenant in common is not a requisite to recovery of rents and profits from a cotenant; therefore, the trial court erred in denying plaintiffs' motion for summary judgment on the ground that a genuine issue of

fact existed as to whether plaintiffs were ousted from possession of the farmlands by defendant cotenant.

APPEAL by defendant from *Cowper, Judge.* Judgment entered 12 December 1977 in Superior Court, CURRITUCK County. Heard in the Court of Appeals 29 January 1979.

This case was consolidated for argument with the case of *E. Ray Etheridge, Executor of the Estate of Annie Mae G. Etheridge v. Doc Horace Etheridge, Jr., Executor of the Estate of Doc Horace Etheridge, Sr., and Doc Horace Etheridge, Jr., Individually,* Case No. 781SC342. This is an action brought by E. Ray Etheridge and Fred G. Etheridge against their brother Doc Horace Etheridge, Jr., alleging that during the years 1975 and 1976 Doc, Jr., appropriated the Annie Mae G. Etheridge farmland to his sole and exclusive use and wrongfully dispossessed and wrongfully excluded plaintiffs as tenants in common from possession and has retained all of the rents and profits from his farming operation. Plaintiffs pray that Doc, Jr., be ordered to make an accounting for and pay "the rents and profits due them in accordance with the co-tenancy in said lands for 1975 and 1976", plus interest, and an order enjoining defendant from excluding plaintiffs-cotenants from the land.

Defendant Doc Horace Etheridge, Jr., answered the complaint denying that he collected any rents from the land and alleging by way of defense that his occupancy was under lease with Annie Mae G. Etheridge and that a specified rental had been set by and paid to Doc, Sr., with the full approval and acquiescence of Annie Mae G. Etheridge. Defendant averred that the basis for the contractual arrangement made through Doc, Sr., was due to the fact that the land here in question originally was purchased by Doc, Sr., and the father of Annie Mae G. Etheridge, but legal title was placed solely in the name of her father. Nevertheless, defendant avers, Doc, Sr., was considered one-half owner of the property, thus explaining why rental payments were made to Doc, Sr. Defendant alleges, in the form of a counterclaim, that he is entitled to the value of improvements he placed on the land. Furthermore, he alleges that he is entitled to his share of the rental value of the house which has been occupied by plaintiff E. Ray Etheridge since 15 November 1975.

The record indicates that Annie Mae died testate 18 January 1975 leaving the homeplace and farm to Doc, Sr., for life while granting E. Ray Etheridge the right to occupy the house and curtilage jointly along with Doc, Sr., the remainder interest in the house and curtilage to pass to E. Ray Etheridge in fee at Doc, Sr.'s death. Doc, Sr., dissented from the will 5 February 1975 (this right established by consent judgment 25 November 1975) and died testate 15 November 1975.

Annie Mae's will provided that in case of dissent by Doc, Sr., the defendant and his two sons would take nothing under that portion of the will which devised part of the real estate to Doc, Jr., for life, remainder to his sons. The portion of the will divesting Doc, Jr., and his sons of their interest was declared valid by this Court as was the trial court's order directing that commissioners be appointed to take Doc, Sr.'s statutory share first from that portion of the real estate divested from Doc, Jr., and his sons. *In re Etheridge*, 33 N.C. App. 585, 235 S.E. 2d 924 (1977), *cert. denied*, 293 N.C. 253, 237 S.E. 2d 535 (1977).

Doc, Sr.'s will provided in pertinent part:

### "ITEM TWO

I will and bequeath the sum of One Hundred ($100.00) Dollars, each, to my sons E. Ray Etheridge and Fred G. Etheridge; and after paying my just indebtedness and the cost of the administration of my estate, I bequeath the remainder of my cash or monies that I may own at the time of my death be equally divided among my grandchildren living at the time of my death.

### ITEM THREE

I will and bequeath the remainder of all my personal property of every kind and description to my son, Doc Horace Etheridge, Jr.

### ITEM FOUR

I will and devise all of my real property, wherever same may be located, to my son, Doc Horace Etheridge, Jr."

Doc, Jr., was appointed executor of the estate.

On 22 November 1977, plaintiffs filed a motion for summary judgment alleging (1) their entitlement as a matter of law to an accounting from defendant for rents and profits for 1975 and 1976, and (2) relying on the will of Annie Mae G. Etheridge and the decision of this Court in *In Re Etheridge*, supra, that they are entitled to a dismissal of defendant's counterclaim.

Upon the hearing on the motion, defendant tendered two affidavits. His own affidavit was intended essentially as a verification of the allegations of the answer and counterclaim. The affidavit by his son James Owen Etheridge stated that he had personal knowledge of the agreement between Doc, Jr., and his paternal grandparents. The agreement provided that Doc, Jr., was to farm the land for $30 per acre per year, rental to be paid directly to Doc, Sr. The affidavit stated that the arrangement was with the consent and acquiescence of Annie Mae. The trial court held the affidavits inadmissible under G.S. 8-51, the "Dead Man's Statute", and denied defendant's motion to amend the counterclaim to allege ouster by Ray Etheridge. The court then granted summary judgment dismissing defendant's counterclaim and denied summary judgment on plaintiffs' cause of action on the grounds that genuine issues of materal fact exist with respect to the alleged ouster of plaintiffs by defendant.

Defendant appeals from the entry of judgment dismissing his counterclaim. Plaintiffs thereafter filed a petition for writ of certiorari to this Court to review the trial court's denial of their motion for summary judgment. This Court entered an order 31 January 1978 reserving consideration of the petition for the panel assigned to this case.

*White, Hall, Mullen, Brumsey & Small, by Gerald F. White and John H. Hall, Jr., for plaintiff appellees.*

*Twiford, Trimpi and Thompson, by John G. Trimpi, for defendant appellant.*

MORRIS, Chief Judge.

We will first discuss the questions presented by defendant's appeal and then we will address plaintiffs' petition for certiorari.

## Defendant's Appeal

[1]   Prior to the hearing on plaintiffs' motion for summary judgment, defendant filed two affidavits for consideration by the court. At the hearing, the court refused to allow them into evidence. Defendant excepted to the ruling as to each affidavit. These exceptions form the basis of his assignment of error No. 1.

The first affidavit was by Doc Horace Etheridge, Jr., and incorporated by reference the averments contained in his unverified answer. This question was answered in *Etheridge v. Etheridge*, No. 781SC342 filed 1 May 1979. What was said there is applicable here. The affidavit was not admissible as evidence. The second affidavit was that of Owen Etheridge, son of defendant. This question also was raised in *Etheridge v. Etheridge*, No. 781SC342, and the affidavit was held to be admissible. What was said there with respect to its admissibility is also true here. However, even if the court erred in failing to admit the affidavit, no prejudice resulted to defendant in this case. The affidavit is directed to conversations had with affiant's grandmother, Annie Mae G. Etheridge. It refers to events occuring prior to her death. Affiant said that he "was personally acquainted and frequently saw and conversed with my said grandmother, both in her presence alone, and in the presence of her and my father"; and *"That prior to her death,* I knew and had personal knowledge of the agreement between her, my grandfather and my father that all their land would be farmed by my father for $30.00 per acre"; and "That I know to my own knowledge by conversations I *had had* with my grandmother that she knew the *rent for 1974 had been paid* by my father, and that she indicated no disapproval of this arrangement, which on information and belief, has been going on for many years prior. That by her actions and conversations with me she approved and acquiesced in the holding and cashing of the rent checks by my grandfather." (Emphasis added.)

This suit is for rents and profits for the years 1975 and 1976—after the death of Annie Mae Etheridge. *Etheridge v. Etheridge*, No. 781SC342 involved the year 1974. While the admissibility of the affidavit would not be prohibited by the Dead Man's Statute, and this plaintiffs concede, it is not relevant to this action, and the court properly excluded it. This assignment of error is overruled.

[2] At the hearing on plaintiffs' motion for summary judgment, defendant moved for permission to amend his counterclaim to allege ouster from the homeplace. The court denied the motion, and defendant excepted. He concedes that he must show abuse of discretion. In his brief, defendant contends that there was abuse of discretion "because the motion was denied at the summary judgment stage well in advance of trial", and "because the nature of the counterclaim was not significantly changed to either prejudice or surprise plaintiffs". We fail to see abuse of discretion here. While it may be true that where the relief sought is fair rental value for a cotenant's occupancy of the house, ouster must be shown, the question is not before us. Defendant correctly states that the dissenting spouse, upon filing dissent to the will, becomes vested, *eo instante*, as of the date of the testator's death, with title to the intestate share of the testator's realty which is allowed by the statutes providing for dissent. G.S. 30-1 *et seq.*; *Bank v. Melvin*, 259 N.C. 255, 130 S.E. 2d 387 (1963). "All rents accruing from the use and occupancy of his realty after the death of an intestate become the property of the heirs entitled to the real property." 259 N.C. at 263, 130 S.E. 2d at 394. Defendant contends that because this is so, Doc, Sr., became vested with title to 1/3 of the realty of Annie, including 1/3 interest in the homeplace; that, assuming ouster, Doc, Sr., was, therefore, entitled to 1/3 rental value until his death and defendant, Doc, Jr., by virtue of Doc, Sr.'s will succeeded to that right. Even if ouster is assumed, there is no entitlement to rents and profits in Doc, Sr., or Doc, Jr. We think the rights devolving after the allocation by the commissioners of the spouse's share after a dissent is analagous to the rights which devolved upon a widow in the allocation of her dower before its abolishment. The principle was enunciated in *Reitzel v. Eckard*, 65 N.C. 673 (1871). There the Court, speaking through Pearson, Chief Judge, to the question of whether dower could be allowed out of dower where there were successive widows, said:

> "*Dos de dote peti non debet*, is a maxim of the common law. The principle upon which it rests is this: although by the descent, the seizure is cast upon the heir, yet when dower is assigned to the widow, her estate is an elongation of the estate of the husband; and *her seizure relates back, so as wholly to defeat the seizure of the heir*; . . ." (Emphasis added.)

*See also Rook v. Horton*, 190 N.C. 180, 129 S.E. 450 (1925), and cases there cited. So it is here. When the lands were allotted to Doc, Sr., by the commissioners, Doc, Sr.'s seizure related back to the death of Annie. He was not allotted any interest in the homeplace, this Court having held that the tracts devised to Doc, Jr., Joe, and Owen Etheridge (sons of Doc, Jr.) should be the first tracts set aside for the purpose of determining which tracts should be used to comprise the intestate share. *In re Etheridge*, supra. It is obvious that an allegation of ouster would not save defendant's counterclaim. This assignment of error is overruled.

Defendant's final assignment of error is directed to the court's signing and entering summary judgment against defendant and in dismissing with prejudice his counterclaim for "relief in the way of setoff for the labor and materials Doc, Jr. expended and performed incident to the cultivation and harvesting of the crops grown on the farmlands during 1975 and 1976." We think clarity would be better served by including these contentions in a discussion of the question posed by plaintiffs' petition for a writ of certiorari. In our discretion, we have allowed the petition, issued the writ, and will consider the question presented on its merits.

## Plaintiffs' Appeal

[3] Plaintiffs filed their motion for summary judgment on 22 November 1977. The motion was based upon the premise that "there is no genuine issue as to any material fact with respect to defendant having farmed all of the cleared land referred to herein during the years 1975 and 1976, and that plaintiffs, as a *matter of law*, are entitled to a true and accurate accounting from the defendant for the rents and profits received by him for the years 1975 and 1976 and plaintiffs are entitled to payment by the defendant for the amount of rents and profits due them in accordance with their cotenancy, . . ." On 12 December 1977, after a hearing on the motion, the court entered its order, the pertinent portion of which is as follows: "it appearing to the Court that there is a genuine issue of material fact on the issue of whether or not plaintiffs were ousted from possession of the farmlands by defendant in 1975 and 1976 and that plaintiffs are not entitled to judgment because of this one issue of fact." It, therefore, clearly appears that if plaintiffs are not required to show ouster in these

circumstances, they would be entitled to summary judgment requiring an accounting by defendant for rents and profits.

At common law, as it existed prior to the enactment of the Statute of Anne in 1705, one tenant in common was not accountable to the other for the use by him of the common property, nor was he accountable for the rents he had received from third persons. *Annot.* 51 A.L.R. 2d 388 *et seq*. That statute provided " 'Actions of Account shall and may be brought and maintained' by one joint tenant, or tenant in common, his executors and administrators 'against the other, as Bailiff for receiving more than comes to his just Share or Proportion.' " *Id.* at 394-395.

In *Chambers v. Chambers*, 10 N.C. 232 (1824), the Court had before it "[a]ssumpsit for use and occupation, of money had and received" brought by one tenant in common against the other who had taken possession of a messuage and adjoining land and received the whole profits. There was no lease or other agreement. Taylor, Chief Judge, wrote,

> "But when one tenant in common secured the rents and profits of a real estate, the other could not bring an action of account against him at common law, unless the latter was appointed bailiff. This is remedied in England by the statute of Anne, which, however, has not, I believe, been e[x]tended by construction to an action on the case. In this State, the law remains as it was when Lord Coke wrote: 'Albeit one tenant in common take the whole profits, the other has no remedy by law against him, for the taking of the whole profits is no ejectment.' Co. Lit., 199b." *Id.* at 233.

Hall, Judge, concurred and noted that in the event of an ouster by one tenant in common of the other, after judgment for the other in ejectment, "trespass would lie for the mesne profits", but no recovery could be had in assumpsit. However, in *Wagstaff v. Smith*, 17 N.C. 264 (1832), an action for an accounting of rents and profits was allowed, and on rehearing of the case, the Court said:

> "At common law, a tenant in common, unless where he had made his companion bailiff, could not have an action of account, but by the statute 4 Anne, Ch. 16, it was enacted that an action of account may be maintained by one tenant in common against the other, *as bailiff*, for receiving more than his

share. It was doubted by the plaintiff's counsel, in the argument, whether this statute was in force here—but we see no foundation for that doubt. It is avowedly an 'act for *the amendment of the law* and the better advancement of justice,' and one of those statutes for the amendment of the law repeatedly recognized as in force by our Colonial Legislature, and so declared in the Act of 1777, the court law." *Wagstaff v. Smith*, 39 N.C. 1, 2 (1845).

By the time *McPherson v. McPherson*, 33 N.C. 391 (1850), was heard, the statute had been adopted, (R.S. c. 31, § 104; *see also* Rev. Code, ch. 31, § 99) and the action was brought under its provisions. No proof of ouster was required. The Court said:

"Every tenant in common who has been in the enjoyment of the property is liable to account, but no recovery can be had against him unless, upon taking the account, it is shown that he has received more than his just share. The mode of enjoyment is not material. It makes no difference whether he uses it merely for shelter and as a means of supporting himself and family, or makes money by selling the products, or receives money as rent; in either case he is bound to come to an account with his fellows, and can only avoid it by averring and proving that he has already accounted." 33 N.C. at 401-02.

Again, in *Northcot v. Casper*, 41 N.C. 303 (1849), the Court held that one tenant in common was required to account to his cotenant for all his shares of the profits, no matter when received except that the statute of limitations would begin to run from the time of demand and refusal thereof or, if there is an ouster, from the time of ouster. No requirement of pleading or proving ouster in order to maintain the action appears.

That proof of ouster is not a requisite to recovery of rents and profits is clearly pointed out in *Roberts v. Roberts*, 55 N.C. 129 (1855).

"The relation of tenants in common being admitted, an account is an order of course, for the purpose of ascertaining what rent or benefit each had derived from the common fund. But it does not follow that upon the coming in of the report, the plaintiff is entitled to a decree for a ratable part of the

amount charged against each: That depends upon whether one has received more than his just share." *Id.* at 130-31.

*See also Jolly v. Bryan,* 86 N.C. 457 (1882); *Boone v. Peebles,* 126 N.C. 824, 36 S.E. 193 (1900); *Smith v. Smith,* 150 N.C. 81, 63 S.E. 177 (1908).

We do not find that the rule has been changed in more recent decisions. In *Whitehurst v. Hinton,* 209 N.C. 392, 184 S.E. 66 (1936), plaintiffs sought an accounting from defendants for rents and profits received by defendants for lands described in the complaint and owned by plaintiffs and defendants as tenants in common since the death of their common ancestor in 1910. In affirming the trial court's entry of judgment that plaintiffs, as tenants in common with defendants, were entitled to an accounting from defendants for the rents and profits received and collected by defendants from the lands owned by them and plaintiffs as tenants in common, the Court, speaking through Justice Connor, said:

"One who has received more than his share of the rents and profits from lands owned by him and others as tenants in common is accountable to his cotenants for their share of such rents and profits. In the absence of an agreement or understanding to the contrary, he is ordinarily liable only for the rents and profits which he has received. He is not liable for the use and occupation of the lands, but only for the rents and profits received." 209 N.C. at 403, 184 S.E. at 73.

*See also Lovett v. Stone,* 239 N.C. 206, 79 S.E. 2d 479 (1953); *Hunt v. Hunt* and *Lucas v. Hunt,* 261 N.C. 437, 135 S.E. 2d 195 (1964); *Watson v. Carr,* 9 N.C. App. 217, 175 S.E. 2d 733 (1970), where we held that the rule of *Whitehurst, supra,* limits the recovery to the rents and profits actually received and not the reasonable rental value.

In his answer, defendant averred that, over a period of years, and under an agreement with his mother, who then owned the land, he spent much time and money clearing and taking in for farming "many acres of land". We assume that defendant used that land in his farming operation to produce crops for sale. In any event, he properly does not seek credit therefor. He does, however, by way of "counterclaim" seek credit for sums of money

spent by him for machinery, labor, equipment, fertilizer, etc., necessary in the production of crops and in the "betterment of the property". Of course, G.S. 1-340 *et seq.* having to do with betterments and value of improvements to land are not applicable to tenants in common, *Layton v. Bird*, 198 N.C. 466, 152 S.E. 161 (1930), but "[i]f one tenant in common makes improvements upon the common property he will be entitled, *upon actual partition*, to have that part of the property which he has improved allotted and assigned to him, and its value assessed as if no improvements had been made, if this can be done without prejudice to the interests of his cotenants", *Jenkins v. Strickland*, 214 N.C. 441, 444, 199 S.E. 612, 614 (1938), a situation not present in the case before us. The only improvement to the land averred by defendant is the clearing of "many acres of land". This was, according to defendant's own averment, with the consent of his mother and obviously done during her lifetime. Clearly defendant has had the advantage of his labor and expense. While other expenditures are included in his "counterclaim", they are expenditures which would ordinarily be taken into account in arriving at whether defendant as tenant in common with plaintiffs, has had more than his "just share or proportion" of the rents and profits which defendant has collected and received from the common property.

The matter is remanded to the Superior Court of Currituck County for further proceedings in accord with this opinion.

Judges MARTIN (Harry C.) and CARLTON concur.